412 P.2d 882

**The STATE of Arizona, Appellee,**

v.

**Alexander LOPEZ, Appellant.**

**Nos. 2 CA–CR 14, 2 CA–CR 24.**

Court of Appeals of Arizona.

April 6, 1966.

Darrell F. Smith, Phoenix, Atty. Gen., Norman E. Green, Pima County Atty., Carl Waag, Deputy Pima County Atty., Tucson, for appellee.

Chandler, Tullar, Udall & Richmond, Tucson, by Thomas Chandler, for appellant.

HATHAWAY, Judge.

Alexander Lopez has taken two appeals to this court, one from a judgment of conviction of grand theft and burglary and the other from an order denying his petition for a writ of habeas corpus. The appeals involve the same issue and, upon appellant's motion, have been consolidated.

In 1963, Lopez was charged by information with grand theft and burglary by the county attorney of Pima county. Lopez, an indigent, was represented by court-appointed counsel. After a trial by jury, he was found guilty of both offenses and was sentenced to the state penitentiary for a term of not less than five nor more than ten years on the grand theft conviction and for a term of not less than ten nor more than fifteen years on the burglary conviction, the sentences to run concurrently.

Trial counsel resigned from the case and Lopez subsequently filed his own notice of appeal. His trial counsel was appointed to represent him on appeal, but asked to be relieved of the assignment and present appellate counsel was appointed in his stead. The primary question involved in this appeal is the adequacy of appellant's representation by trial counsel. Appellate counsel expresses distaste for the necessity of impugning the adequacy of representation by a fellow member of the bar but maintains that the inadequacy of representation deprived Lopez of his constitutional right to a fair trial.

The record discloses the following sequence of events which culminated in appellant's arrest. At 4:27 a. m. on January 12, 1963, a burglar alarm went off at the Arizona Paper Stock Company in Tucson. The operator of the alarm system notified the Tucson Police Department and proceeded to the premises of the paper company. When he arrived the police were already on the scene. Investigation revealed that an office had been broken into and between $200 and $300 was missing from a cash drawer.

Police officer West, upon receipt of a call in his patrol car concerning the break in, drove towards the scene of the alleged burglary and parked nearby. While parked, he observed an individual running who subsequently changed directions and ran towards the patrol car. As this person came alongside the patrol car, he slammed the open car door against the officer and fled. The officer pursued but failed to catch him.

Officer West then went to the burglarized office and questioned the manager who was then present. The manager was interrogated about employees and at trial testified:

"* * * and he wanted me, to know if I knew anybody who was husky built a William C. Gay, and I said no, this fellow would be of Mexican descent and I mentioned also Lopez and Joe Ross, and I said that he had a small mustache, good looking, and he asked me how old he was and I said between twenty-five and thirty years old, and he said 'That

is the guy,' and he says 'That is the guy that I saw out on the street.' "

The police officer procured appellant's address from his W–4 Form on file with the paper company, and went to this address accompanied by officers Lugo and Henry. Officer Lugo knocked at the door which was opened by appellant's mother. They conversed in Spanish and then Mrs. Lopez allowed the officers to enter. In the room which they entered they found Lopez in bed in his underwear. When asked if he knew why the officers were there Lopez replied that he did not know. Officer Lugo asked him to get out of bed so that they could talk with him. As he complied, the officers spied a chip of wood lying on the bed sheet. They took possession of the chip.

Upon the officers' request, Lopez consented to accompany them to the police station for further interrogation. Appellant testified that he asked the officers if they had a search warrant and was informed that none was needed. Lopez' clothes which were lying on a chair were examined by the officers before he put them on. As officer Lugo picked up appellant's jacket, he spotted a yellow-handled screwdriver in the jacket pocket which aroused his suspicion. Lopez was questioned about the screwdriver and admitted ownership. He was placed under arrest and was locked in the police wagon while the officers returned to the house to conduct a more intensive search of his room. Upon further interrogation at the police station Lopez admitted that he was the one who had fled from officer West.

During the trial, the county attorney was in the process of having certain exhibits identified when defense counsel volunteered to concede the foundation for the exhibits. The trial judge, before accepting the stipulation, declared a recess and the following colloquy ensued:

"The Court: Strange as it may seem, I want to save time of the trial, but I am a little—this evidence is so crucial—have you consulted with your client, Mr. ————? Does he understand what you are conceding here?

"Defense Counsel: I am conceding that the screwdriver went from the house into the hands of the police.

"The Court: I see.

"Defense Counsel: Yes, sir.

"The Court: And that there was no substantial change in the screwdriver, and the same for the locking mechanisms, is that what you are saying? Also for the cash drawer, that they weren't changed from the time that they were taken from the scene and turned over to Captain Kempe; is that the expert that the State is going to call?

"County Attorney: That is correct, sir.

"The Court: And does that apply to the wood, also?

"Defense Counsel: Not to the wood.

"The Court: That little piece of wood, not that, but as to the locking mechanism and the screwdriver will remain the same, and you have consulted with your client, and does he understand what we are doing here?

"Defense Counsel: Yes, your Honor.

"The Court: And you are satisfied, Mr. ————, from having talked to these officers that they did take proper care of these items?

"Defense Counsel: Subsequent to their leaving the house, yes, sir."

When court reconvened, the jury was instructed that a stipulation had been entered into that the screwdriver, the locking mechanism of the cash register and a portion sawed out of the cash register were in substantially the same condition when turned over to Captain Kempe of the City Crime Lab as when taken from appellant's home. Later in the course of the trial, the State called Captain Kempe as a witness. When asked to state his qualifications in the field of tool microscopy, he was interrupted by defense counsel and the following interchange took place:

"Defense Counsel: Your Honor, we will stipulate to the extent that the defense

is willing to accept the qualifications and to qualify Captain Kempe as any kind of expert that the State wants to qualify him as. We think he is pretty good.

"County Attorney: Does that stipulation go to the special field of tool microscopy, the examination of instruments, of tools?

"Defense Counsel: That is right.

"County Attorney: Screwdrivers, metal plates and the recognizable marks, if any, that they make upon the other?

"Defense Counsel: Yes, your Honor.

"County Attorney: And the microscopic examination of wood, wood chips and paint chips and so forth?

"Defense Counsel: Yes, your Honor."

The county attorney accepted the stipulation and then proceeded, without objection by defense counsel, to ask the witness about his experience in the field of tool microscopy. The witness positively identified the screwdriver admitted into evidence as the tool which opened the cash drawer. He testified that "it was a perfect match on both pieces of metal" and that the results were "probably one in a million."

Appellant took the stand in his own behalf and on cross-examination by the county attorney was asked, without objection by defense counsel, as to whether the officers had been telling the truth, why they would want to lie, and what his attitude was "towards policemen in general."

We have in the record before us an affidavit executed by trial counsel in which he states: (1) that he was admitted to practice law six months prior to Lopez' trial; (2) that he had never tried a criminal case and that this was his first jury trial; (3) that he never interviewed Captain Kempe prior to trial; (4) that he had no recollection of having interviewed, prior to trial, any of the police officers who testified; (5) that prior to entering into the stipulation concerning the admission of exhibits, his discussion with the accused concerning same consisted of his telling Lopez

in substance "We should stress the fact that the screwdriver and the wood chip was not in fact in your possession and let other matters go"; the accused responded that whatever counsel recommended was all right with him.

■ Article 2, Section 24, Arizona Constitution, A.R.S., guarantees to an accused person in criminal proceedings the right to representation by counsel. The federal constitution contains a similar guarantee. Amendment VI, United States Constitution. Recognition of a constitutional right to *effective* counsel stems from Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 61, 77 L.Ed. 158 (1932), wherein the United States Supreme Court spoke of giving "effective aid in the preparation and trial of the case." The constitutional right to effective representation by counsel has been reiterated in later cases. Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940); Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L.Ed. 1348 (1945); Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61 (1945); Michel v. State of Louisiana, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); Ellis v. United States, 356 U.S. 674, 78 S.Ct. 974, 2 L.Ed.2d 1060 (1958).

■ What then is *"effective assistance,"* the judicial construction of the constitutional requirement for the assistance of counsel? It obviously means something other than successful assistance. Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. den., 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958); Hester v. United States, 303 F.2d 47 (10th Cir.), cert. den., 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82 (1962).

In MacKenna v. Ellis, 280 F.2d 592, aff'd, 289 F.2d 928 (5th Cir.), cert. den., 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961), the court stated:

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel, and not counsel judged ineffec-

tive by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." 280 F.2d at 599.

In United States v. Wight, 176 F.2d 376 (2d Cir.1949), cert. den., 338 U.S. 950, 70 S.Ct. 478, 94 L.Ed. 586 (1950), it was said that the rule contemplates the conscientious service of competent counsel and that a mere perfunctory appearance for a defendant is not enough. See also Turner v. State of Maryland, 303 F.2d 507, 511 (4th Cir.1962). However, it has been held that invalidation of convictions on allegations of ineffective counsel is not warranted where counsel's competence is challenged because of the "quality of a defense" or matters of "counsel's judgment," Lyons v. United States, 325 F.2d 370 (9th Cir.1963), cert. den., 377 U.S. 969, 84 S.Ct. 1650, 12 L.Ed.2d 738 (1964); United States ex rel. Feeley v. Ragen, 166 F.2d 976 (7th Cir.1948), or "a matter of trial strategy." McDonald v. United States, 282 F.2d 737 (9th Cir.1960).

The test of effective assistance of counsel as stated in Frand v. United States, 301 F.2d 102, 103 (10th Cir.1962) and reiterated in Goforth v. United States, 314 F.2d 868 (10th Cir.1963) is:

> " * * * It is instances in which resulting from the substandard level of the services of the attorney the trial becomes mockery and farcical that the judgment is open to collateral attack on the ground that the accused was deprived of his constitutional right to effective assistance of counsel. (Citations)" 314 F.2d at 871.

Without a doubt cases such as the instant one raise questions of considerable difficulty in the orderly administration of justice. We are aware, as pointed out in Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667, 670 (1945), that the opportunity to try his former lawyer has its undoubted attraction to a disappointed prisoner. This is an undeserved reward for lawyers who spend long hours and devote their skill and strength to defend those accused of crime, with little or no compensation for their efforts.

██ In order to justify relief on the ground of lack of effective assistance of counsel, "an extreme case must be disclosed." People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 866, 386 P.2d 487, 490 (1963); Maye v. Pescor, 162 F.2d 641, 643 (8th Cir.1947); See 4 U.C.L.A.L.Rev. 400, 403. We have scrutinized the record carefully and are convinced that the case at bar is just such an extreme case and that appellant was deprived of his constitutional right to a fair trial.

██ It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled. People v. Mattson, 51 Cal.2d 777, 336 P.2d 937, 949 (1959); People v. Ibarra, supra. In the latter case, a crucial issue was whether the heroin taken from defendant's pocket was legally obtained. Following the testimony on the search and seizure, the trial court asked defense counsel if he wished to object to the admission of the heroin. Defense counsel declined to object in view of the fact that the defendant denied that the heroin was in his possession and was taken from him. The court, in reversing the conviction because counsel's failure to object precluded resolution of the crucial factual issues supporting defendant's primary defense, thereby reducing his trial to a farce and a sham, stated:

> "In the present case the record demonstrates that defendant's counsel did not know of the rule that defendant could challenge the legality of the search and seizure even though he denied that the heroin was taken from him * * *.

> "Counsel's failure to research the applicable law precluded the exercise of judgment on his part and deprived defendant of an adjudication of what was clearly the stronger of the two defenses available to him. * * * There would

have been no inconsistency in asserting that there was no consent to the entry and no probable cause to arrest and search and also that no heroin was found in defendant's possession." 34 Cal.Rptr. at 866, 867, 386 P.2d at 490.

■ The record before us demonstrates that trial counsel's only defense was denial of possession of the screwdriver and the chip of wood which linked the defendant to the alleged crimes. His failure to satisfy himself in advance of trial concerning the admissibility of key items of evidence as a prerequisite to stipulating to their admission, his failure to ascertain and assure himself of Captain Kempe's expertise and the very pattern of his line of questioning lead us to conclude that counsel did not undertake the investigation and research essential to adequate trial presentation. We believe that trial counsel's failure to challenge the admission of crucial evidence connecting appellant with the charged crimes, which was at least arguably excludable as fruit of an illegal search and seizure, resulted from lack of preparedness.

It would appear that reasonably diligent trial counsel would have challenged the admission of the products of the search. The defense actually tendered was so insubstantial by contrast as to cast doubt upon the hypothesis that trial counsel made a deliberate informed choice. Counsel's failure to object precluded resolution of this crucial factual issue.

■■ Competency of counsel is not necessarily concomitant with the frequency of his objections, and mere tactical errors do not, per se, amount to inadequate representation. Howard v. State of Maryland, 240 Md. 699, 213 A.2d 288, 289 (1965). Lack of experience of counsel appointed by the court is not the equivalent of incompetence. United States v. Helwig, 159 F.2d 616, 617 (3d Cir.1947); Wheatley v. United States, 198 F.2d 325 (10th Cir.1952).

The record indicates to us that the trial judge suspected counsel's shortcomings and tried, whenever the opportunity presented itself, to safeguard the appellant's rights.

We have previously indicated the trial court's concern as to trial counsel's concession regarding the foundation for crucial items of evidence. The trial transcript reflects that the court attempted to indicate to trial counsel that an objection to a line of questioning was necessary. One illustration, after a series of leading questions asked by the county attorney of a State's witness, is:

> "The Court: Mr. ———, you will have to object—if you want to. I agree that some of these questions are leading. All right, let's go on."

Another example of the court's assistance:

> "Defense Counsel: I want to object to that. My client introduced a lot of non legal material into this conversation, and the State's Attorney didn't object and what his answers—I was anxious to get the picture and—
>
> "The Court: I think it's argumentative. I think its' an argumentative question. Sustained.
>
> "Mr. Green: And on the grounds that it is argumentative, is that why the—
>
> "The Court: Yes, it's an argumentative question, Mr. Green. Continue.
>
> "Mr. Green: But not on the grounds that counsel stated:
>
> "The Court: No."

■ As an appellate court we are concerned only with questions of law—the guilt or innocence of an accused person is a matter exclusively for jury determination. The constitutional right to a fair and impartial trial and due process also requires that the trial proceed according to the established procedure or rules of practice applicable; that the admission of evidence for or against the accused must be according to the established rules as to competency. 16A C.J.S. Constitutional Law § 589.

In summary, we can only say that the instant combination of trial counsel's lack of experience, apparent lack of preparation, failure to object to improper questioning, failure to challenge admissibility of

crucial items of evidence, and seeming unawareness of the duty owed to the appellant lead to the inevitable conclusion that the appellant has not had the kind of trial contemplated by the law.

Since the appellant was deprived of his constitutional right to effective assistance of counsel, the convictions are reversed with directions to grant appellant a new trial.

KRUCKER, C. J., and GORDON FARLEY, Superior Court Judge, concurring.

NOTE: Judge JOHN F. MOLLOY having requested that he be relieved from consideration of this matter, Judge GORDON FARLEY was called to sit in his stead and participate in the determination of this decision.