447 P.2d 243

**STATE of Arizona, Appellee,**

v.

**Pedro Rodriguez BUSTAMANTE, Appellant.**

**No. 1764.**

Supreme Court of Arizona.

In Banc.

Nov. 20, 1968.

Rehearing Denied Dec. 24, 1968.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, Former Atty. Gen., James S. Tegart, Asst. Atty. Gen., Phoenix, for appellee.

Dushoff, Sacks & Corcoran, by Robert J. Corcoran, Phoenix, for appellant.

LOCKWOOD, Justice.

Defendant Pedro Rodriguez Bustamante was convicted of first degree murder in the death of Paula Ortiz and was sent-enced to life imprisonment. Defendant appeals from this judgment and conviction.

Viewed in a light most favorable to upholding the verdict the following events occurred. At approximately 12:30 p. m. on February 5, 1966, the defendant arrived at 2913 West Garfield in Tolleson, Arizona, the home of the Ortiz family. At the time of defendant's arrival, Mr. and Mrs. Ortiz were sitting in the front room, and two of the Ortiz children were in a rear room watching television. Mr. Ortiz invited defendant to sit down, but he proceeded to the rear of the house to watch television.

After watching television for a short time, defendant moved to the middle room of the house and began conversing with Mrs. Ortiz who was still in the front room with her husband. Defendant asked her to iron a shirt for him. She refused, and told him that he should leave the house. As she spoke she turned her back to defendant and moved across the front room to stand by a window. Defendant walked into the front room and, without further words, pulled a .25 caliber revolver from his coat pocket and shot Mrs. Ortiz twice in the back and once in her right arm. At the first shot, Mr. Ortiz lunged for the defendant, but before he could reach him all three shots had been fired. As Mr. Ortiz struggled to wrest the gun from defendant, a fourth shot was fired into the ceiling. The defendant had purchased the revolver the day before the shooting.

Defendant first urges that the court erred in denying his motion to quash the information as to first degree murder. He maintains that the preliminary hearing brought forth no evidence of premeditation and deliberation in the shooting of Paula Ortiz. Therefore, he claims an open charge of murder, which necessarily includes first degree murder, was violative of due process of law, and, therefore, the information should be quashed.

Whatever the merits of defendant's position the short answer is that his motion to quash was not timely. Rule 166 of the Rules of Criminal Procedure, 17 A.R.S.

provides in pertinent part: "Upon being arraigned the defendant shall immediately, unless the court grants him further time, either move to quash the indictment or information or plead thereto, or do both." On March 15, 1966, defendant was arraigned on an open charge of murder, pleaded not guilty and was granted ten days "within which to further plead". Defendant did not move to quash the information until September 9, 1966, ten days before the trial commenced. In State v. Cravin, 96 Ariz. 346, 395 P.2d 706 (1964), in which a defendant's motion to quash was not made until approximately eight months after arraignment, we faced the same issue and held that a motion to quash must be raised at the arraignment or within such time as the trial court may fix, citing Rule 79 and Rule 166 of the Rules of Criminal Procedure, 17 A.R.S.

Defendant moved for a directed verdict as to first degree murder both at the close of the state's case and at the close of all the evidence. The denial of these motions is claimed as error.

In regard to defendant's motion at the close of the state's case the law is well settled that by going forward and presenting his case defendant has waived any error in the denial of such motion, if any deficiencies in the evidence in the state's case are supplied when defendant's case is presented. State v. Villegas, 101 Ariz. 465, 420 P.2d 940 (1966); Rain v. State, 15 Ariz. 125, 137 P. 550 (1913).

As to defendant's motion for a directed verdict at the close of all the evidence, we have held that where facts are disclosed from which the jury may legitimately reach a verdict of guilty or one of not guilty, and there is substantial evidence that the defendant committed the crime charged, there is sufficient evidence to submit the case to the jury. State v. Turner, 101 Ariz. 85, 416 P.2d 409 (1966). Defendant purchased the gun the day prior to the shooting. He carried it loaded and concealed on his person to the Ortiz home. Without any apparent provocation he walked into the living room and shot Mrs. Ortiz in the back. This was sufficient evidence to support denial of defendant's motion for a directed verdict.

Defendant's third claim is that the evidence does not support an instruction on first degree murder. In Miranda v. State, 42 Ariz. 358, 26 P.2d 241 (1933) Justice Lockwood addressed himself to this problem:

"It is the duty of the court, even in the absence of a request therefor, to call to the jury's attention every degree of crime embraced in the information and which the evidence suggests may have existed. * * * two things must concur * * * for the court to instruct as to any particular degree of homicide. First, it must be charged in the information, and, second, it must appear from some reasonable interpretation of the evidence." 42 Ariz. at 363, 26 P.2d at 242.

It is settled law in this state that deliberation and premeditation can be shown from circumstances. State v. Izzo, 94 Ariz. 226, 383 P.2d 116 (1963). We are of the opinion that the facts and circumstances in this cases are sufficient to support a finding by the jury of first degree murder, and the giving of the instruction was therefore proper.

Defendant next complains that the court, when requested by the jury to repeat his instructions, played a tape recording of his oral instructions in the absence of defendant. This tape was played in the presence of defendant's attorney. Both defendant and his attorney had been present when the jury was originally instructed, and neither had made any objections to any of the instructions.

Rule 231, Par. A. 4., Rules of Criminal Procedure, 17 A.R.S. provides that the defendant shall be present at all proceedings when the jury is present. While its language is broad, we do not believe that this rule proscribes the court's playing back of the taped instruction to the jury when defendant was not present, in the absence of

a showing that it was prejudicial. To hold otherwise would be to exalt form over substance: " * * * the due process of law guaranteed by the 14th Amendment has regard to substance of right, and not to matters of form or procedure * * *." Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 589, 59 L.Ed. 969 (1915). In People v. Medcoff, 344 Mich. 108, 73 N.W.2d 537 (1955), the Supreme Court of Michigan, even though faced with a statute similar to Rule 231 (Comp.Laws. 1948, § 768.3), stated specifically that it was not reversible error for the court to re-read portions of the charge to the jury in defendant's absence.

■ Defendant next urges that the court erred in permitting the jury to consider evidence of defendant's prior drunkenness, "tumultuous conduct", and brushes with the police. Specifically, he objects to testimony of Juana Ortiz, deceased's 14 year old daughter, that her mother didn't want the defendant to visit the Ortiz home, because he was always "drunk and breaking windows * * *". Also, he contends that the testimony of Phoenix police officer James Murphy was highly prejudicial as it implied that defendant had had prior difficulty with the law. We do not agree.

The alleged objectionable testimony of Officer Murphy was as follows:

"Q. What did you do as a result of this broadcast?

"A. I knew the person in question, Pete Bustamante. I knew where he lived, I drove past his house and saw the vehicle described in the broadcast, parked in front of their house."

We cannot see how this testimony implied that defendant had been in trouble with the law merely because the officer knew him and where he lived. We agree with the language in State v. Knicker, 424 S.W.2d 605, 608 (Mo.1968):

" 'It is well known that most police officers have a wide acquaintance among the citizenry in general and the fact that a person is known to a police officer does

not necessarily convey the impression that he has a criminal record.' "

In regard to Juana's testimony about his drunkenness, defendant made no objection to this testimony below, and therefore, he will not now be heard to complain that it should have been excluded. State v. Favors, 92 Ariz. 147, 375 P.2d 260 (1962).

Defendant next argues that the trial judge unreasonably limited his cross-examination of the husband and daughter of the deceased, Benacio and Juana Ortiz. Defendant's counsel was attempting to establish that defendant and deceased were having an affair, presumably to establish a motive for an attack on defendant by Mr. Ortiz which defendant alleged occurred at the time Mrs. Ortiz was shot. According to defendant the death of Mrs. Ortiz was the accidental outcome of a struggle between him and Mr. Ortiz. Defendant contends that the court's strictures on cross-examination prevented him from substantiating his story.

■ The trial court has large discretionary power in the control of cross-examination, subject only to the abuse thereof. State v. Baca, 102 Ariz. 83, 425 P.2d 108 (1967). An examination of the record discloses no abuse of such discretion. The record discloses that defendant's counsel questioned, without objection, Benacio Ortiz on the matter of an affair between his wife and defendant at several points in the cross-examination. Regarding the cross-examination of Juana Ortiz the testimony complained of is:

"Q. [Directed to Juana Ortiz] You didn't like him because he was with your Mother all the time, isn't that true?

"A. Yes.

"MR. LIM: I object to that question, Your Honor.

"THE COURT: The objection is sustained, and the answer will be stricken and the jury is instructed to disregard it."

Although defendant's counsel was forced to withdraw the question in the above-

quoted testimony, a few minutes later he was allowed to ask substantially the same question without objection.

██ Defendant next contends that there was substantial evidence that he was intoxicated at the time of the shooting and, therefore, the jury should have been instructed, even if not requested by the defendant, regarding voluntary intoxication. The flaw in defendant's argument is that the "substantial evidence" to which he alludes was adduced before the court in a pre-trial hearing on a motion to suppress and was not introduced during the trial itself. Obviously, the court could not properly instruct the jury on voluntary intoxication under such circumstances.

██ Defendant's trial counsel chose to try the case on the basis of self-defense and did not introduce evidence of voluntary intoxication. Defendant maintains that his intoxication at the time of the shooting would have prevented him from forming the requisite specific intent on which to base a first degree murder conviction, and therefore was crucial to his defense. Since trial counsel for the defendant failed to introduce evidence of intoxication, defendant contends that he did not receive effective representation from his court-appointed counsel and thus deserves a new trial. This, of course, raises the question of the adequacy of counsel. The principle controlling is that a conviction will be held invalid on such ground only if the representation by counsel was a farce or a sham. State v. Kruchten, 101 Ariz. 186, 197, 417 P.2d 510, 521 (1966):

"'Advocacy is a skill and art; easy to criticize, difficult to fairly appraise. Indeed a post-mortem of criminal trials, selected at random, would undoubtedly reveal flaws of varying magnitude in the trial techniques of respected members of the bar. Our profession is one in which hindsight is a meager measure of counsel's competency. Trial strategy is seldom viewed with a uniform eye.' United States v. Stoecker, * * * (216 F. 2d 51, 52 (C.A. 7, 1954) )."

And in State v. Hines, 78 N.M. 471, 432 P.2d 827, 829 (1967) the Court observed:

"Bad tactics and improvident strategy do not necessarily amount to ineffective assistance of counsel. Defendant is denied effective assistance of counsel only where the trial, considered as a whole, was a mockery * * *."

██ Counsel argued the instant case for defendant on the ground that the shooting was the accidental result of a struggle between defendant and deceased's husband. Perhaps a partial defense based on defendant's voluntary intoxication would have been a better tack. Nevertheless, however, much the Sirens of hindsight may beckon, we must ignore the temptation to second-guess the defense counsel. Effective representation cannot be equated with successful representation. Hester v. United States, 303 F.2d 47 (10th Cir.) cert. den., 371 U.S. 847, 83 S.Ct. 80, 9 L.Ed.2d 82 (1962). We cannot say that defendant failed to receive effective assistance of counsel.

Defendant complains about certain instructions. We find that both counsel for the state and for the defense, having had the opportunity in advance to know what the court had decided to give, agreed before the giving of the instructions that they did not object to them. Nevertheless, we have examined the instructions for fundamental error and find none.

██ Defendant complains that "the instructions to the jury defining first and second degree murder and manslaughter are confusing, incomprehensible, misleading and redundant, obfuscatory and inaccurate." While there was some repetition, it is not sufficient to constitute prejudice, and the instructions are not incorrect. We are of the opinion that defendant's objection to the instructions is without merit.

Judgment affirmed.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.