471 P.2d 763

**The STATE of Arizona, Appellee,**

v.

**Antonio Bonito CUFIO, aka Byron Young, Appellant.**

**No. 1 CA–CR 228.**

Court of Appeals of Arizona, Division 1.

June 29, 1970.

Rehearing Denied Aug. 3, 1970.

Review Denied Oct. 20, 1970.

462

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Burton & Weeks, by Phillip Weeks, Phoenix, for appellant.

HATHAWAY, Judge.

The defendant was charged with the offense of offering to sell unregistered securities, a felony, and the jury found him guilty thereof. From the judgment of conviction, the defendant appeals. The following grounds are urged for reversal: (1) Denial of effective assistance of counsel; (2) re-reading of the instructions to the jury in the absence of the defendant without his having waived his right to be present; and (3) introduction into evidence of other acts of misconduct on the part of the defendant.

Briefly, the procedural chronology is as follows. On April 5, 1968, the defendant, represented by retained counsel, entered a plea of not guilty and trial was set for May 15th. On April 25th, the trial court permitted defense counsel to withdraw and appointed the public defender to represent the defendant. On May 3, the public defender filed a motion for examination of the defendant's mental condition, pursuant to Rule 250, Rules of Criminal Procedure, 17 A.R.S. The same day, the court ordered a Rule 250 examination and appointed two psychiatrists to conduct the examination. The psychiatrists submitted their respective reports. Dr. Tuchler, on the basis of an interview with the defendant which was detailed in the report, stated:

"The subject is a man of good intelligence. There is no evidence of mental deficiency.

On the basis of the interview, as reported above, the subject is quite able to understand the proceedings against him, and to assist counsel in his defense. There is no evidence of a mental deficiency or of a mental illness in either the legal or psychiatric sense."

Dr. Rabinow's letter to the court stated:

"In my opinion he is insane and psychotic to the extent that he is unable to assist in his defense. He is unaware of the nature and consequences of his acts and does not know the difference between right and wrong.

RECOMMENDATION: Due to his present psychosis, I feel he should be committed to the Arizona State Hospital for psychiatric treatment."

On May 15, 1968, the superior court ordered commitment of the defendant to the Arizona State Hospital for confinement and treatment, expressly finding "that the defendant, Antonio Bonito Cufio, is unable to understand right from wrong and is unable to assist counsel in his defense."

Two weeks after commitment, the hospital authorities informed the superior court that the defendant was then able to understand the criminal proceedings against him and to assist in his defense.

Appended to this communication was a copy of a psychiatric examination dated May 30, 1968, which recited the following prognosis:

"Guarded in that he does not appear to profit from experience. However, he is unlikely to modify his long standing pattern of behavior. He understands fully the charges against him, is able to co-operate in his own defence and to assist his counsel. He is therefore, able to stand trial and for this reason is being returned to the jurisdiction of the court for such disposition as they choose to make of him."

The defendant was tried on July 1, 1968, and the jury returned a guilty verdict. The court expressed concern for the defendant's mental capacity and sanity and therefore, on its own motion, directed the reporter to prepare a transcript of all testimony of the defendant presented in the case for purposes of further pre-sentencing psychiatric evaluation. A third psychiatrist was appointed to conduct a psychiatric evaluation of the defendant and Drs. Tuchler and Rabinow were directed to conduct supplemental examinations of the defendant.

All three psychiatrists submitted written reports to the court. Dr. Tuchler affirmed his prior opinion that the defendant was not psychotic. Dr. Rabinow, on the other hand, expressed a contrary opinion. The third psychiatrist, Dr. Breitner, reported *inter alia*:

"Psychiatric diagnosis conforming with the present classification of the American Psychiatric Association would justifiably be one of a Manic-Depressive illness, Manic-Phase. * * * Depending on further studies and observations one might even arrive at the diagnosis of a chronic paranoid patient. Delusions of grandeur are common in such conditions of long standing. At any rate the patient is considered psychotic. It is characteristic of emotional illness that it is a fluctuating one and this might well explain the difference of opinion in psychiatric diagnoses of previous examiners. * * * I am unable to state with certainty in what condition the defendant was at the time he perpetrated his transgressions but there is reason to assume that he was as grandiose then as he is on most occasions, and that his judgement [sic] and evaluation of the nature and consequences of his acts was severely disturbed at that time too.

*   *   *   *   *   *

It is my opinion that this man will get into further trouble with the law if left to his own devices and therefore should be in the protective custody of a mental hospital. However, this man has little or no chance to benefit from treatment."

On August 27, 1968, the court again found the defendant to be insane, based upon the psychiatric evaluations, and ordered his commitment to the Arizona State Hospital for treatment. The hospital subsequently advised the court that the defendant was able to understand the proceedings against him and after a hearing on the mental condition of the defendant, the court concluded that he was not insane and therefore sentence could be imposed. Therefore, on January 9, 1969, the defendant was adjudged guilty and placed on probation for a period of one year. The defendant's motion for a new trial, as to which the court had postponed its ruling, was denied.

On appeal, the defendant is represented by different counsel who expresses extreme reluctance at having to impugn the competency of trial counsel. He contends that there was· strong evidence of the defendant's insanity of which the public defender and the court had knowledge,. and since there was no other real defense to the crime charged other than the defense of insanity, the failure to plead such defense constituted such ineffective representation as to be tantamount to a denial of the defendant's constitutional right to counsel.

In this state, we have recognized that the controlling question, when ade-

quacy of counsel is attacked, is: Was the representation a farce or a sham? State v. Bustamante, 103 Ariz. 551, 447 P.2d 243 (1968); State v. Hill, 104 Ariz. 238, 450 P.2d 696 (1969). As our Supreme Court observed in State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966):

> " 'Advocacy is a skill and art; easy to criticize, difficult to fairly appraise. Indeed a post-mortem of criminal trials, selected at random, would undoubtedly reveal flaws of varying magnitude in the trial techniques of respected members of the bar. Our profession is one in which hindsight is a meager measure of counsel's competency. * * *'" 101 Ariz. at 197, 417 P.2d at 521.

See also, Barron v. State ex rel. Eyman, 7 Ariz.App. 223, 437 P.2d 975 (1968); Loftis v. State, 4 Ariz.App. 3, 417 P.2d 374 (1966).

Of necessity, we indulge in the presumption that under our adversary system an attorney will strive to defend his client's interests to the best of his professional ability. Therefore, when counsel has been provided to him, we impose upon a defendant the burden of establishing his allegation of inadequate representation not as a matter of speculation but as a demonstrable reality. People v. Reeves, 64 Cal. 2d 766, 51 Cal.Rptr. 691, 415 P.2d 35 (1966); State v. Ranne, 80 N.M. 188, 453 P.2d 209 (1969); State v. Hemminger, 203 Kan. 868, 457 P.2d 141 (1969); Parks v. State, Okl.Cr., 457 P.2d 818 (1969). One of the few ways to establish that counsel's assistance was *in fact* worthless is to establish that through a mistake of law or fact counsel withdrew a crucial defense from the case. In re Smiley, 66 Cal.2d 606, 58 Cal.Rptr. 579, 427 P.2d 179 (1967). As we stated in State v. Lopez, 3 Ariz.App. 200, 412 P.2d 882 (1966):

> "It is counsel's duty to investigate carefully all defenses of fact and of law

that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled. [citations omitted]" 3 Ariz.App. at 204, 412 P.2d at 882.

■■ In *Lopez*, and in People v. Ibarra, 60 Cal.2d 460, 34 Cal.Rptr. 863, 386 P.2d 487 (1963), cited in *Lopez*, the trial record itself disclosed counsel's dereliction in withdrawing a crucial defense. Such is not the case here.[1] We find nothing in the record which demonstrates that counsel failed to explore the possibility of an insanity defense, thereby precluding the exercise of judgment. See In re Hawley, 67 Cal.2d 824, 63 Cal.Rptr. 831, 433 P.2d 919 (1967); People v. Hill, 67 Cal.2d 105, 60 Cal.Rptr. 234, 429 P.2d 586 (1967); People v. McDowell, 69 Cal.2d 737, 73 Cal.Rptr. 1, 447 P.2d 97 (1968). The mere fact that the defendant was found by the trial court to be insane at the time of trial and at the time of sentencing does not *ipso facto* demonstrate insanity at the time of commission of the charged offense. The factors which establish sanity for purposes of standing trial do not coincide with those which establish insanity under the M'Naughton test. People v. Pennington, 66 Cal.2d 508, 58 Cal.Rptr. 374, 426 P.2d 942 (1967). Although conceivably a defense of insanity might have been a better strategy, we cannot, with our 20–20 hindsight advantage, equate counsel's lack of success with lack of effective representation. State v. Bustamante, supra; State v. Hudgens, 102 Ariz. 1, 423 P.2d 90 (1967).

■ The defendant also complains of a fact that the court, when requested by the jury, played a tape recording of the instructions in his absence, contra to the mandate of Rule 231(A) (4), Rules of Criminal Procedure. He concedes that,

---

1. Although the record on appeal lacks the requisite factual support for the defendant's claim of ineffectiveness of counsel, he is not foreclosed from attacking the validity of the judgment of conviction via habeas corpus proceedings or a Rule 60(c) motion. These post-conviction remedies afford an opportunity for judicial examination and determination of the facts surrounding trial counsel's failure to plead the defense which appellate counsel labels "crucial."

absent a showing of prejudice, reversible error is not thereby committed. State v. Bustamante, supra. He urges this court, however, notwithstanding the *Bustamante* holding, to rule otherwise. Were we convinced by his argument, which we are not, we still would be unable to hearken to his plea. McKay v. Industrial Commission, 103 Ariz. 191, 438 P.2d 757 (1968).

■ The defendant's final argument for reversal is predicated on the fact that other separate acts of misconduct were introduced into evidence, to his prejudice. At the beginning of the trial, the defendant attempted to discharge the public defender as his counsel and requested a continuance. After a lengthy hearing thereon, the defendant's requests were refused and the trial proceeded. The defendant prepared his own direct examination, i. e., defense counsel merely propounded the questions supplied by the defendant. Now, on appeal, the defendant complains as to a line of questioning on the part of the prosecutor. However, since the defendant insisted on conducting his own direct examination and he himself injected references to other prior bad conduct, he cannot now claim prejudice. State v. Gallegos, 99 Ariz. 168, 407 P.2d 752 (1965); State v. Carter, 1 Ariz.App. 57, 399 P.2d 191 (1965).

Finding no merit in defendant's claim that he was denied a fair trial, the judgment is affirmed.

HOWARD, C. J., and KRUCKER, J., concur.