498 P.2d 202

STATE of Arizona, Plaintiff,

v.

Randal Joseph DAVIS, Defendant.

No. 2407.

Supreme Court of Arizona, In Banc.

June 16, 1972.

**336**

E. Leigh Larson, Santa Cruz County Atty., by Sarah A. Bailey, Former Deputy County Atty., Nogales, for plaintiff.

Wayne A. Cypert, Nogales, for defendant.

HAYS, Chief Justice.

This case is before us upon a certification of two questions of law from the Superior Court of Santa Cruz County, under Criminal Rule of Procedure No. 346, 17 A.R.S.

Defendant was charged with the illegal importation and transportation of marijuana, with two prior felony convictions: one for possession of heroin and one for possession of narcotics.

Trial was set, *in defendant's presence,* for March 23, 1971. Defendant, who was in jail for revocation of probation, was transferred to the Maricopa County Hospital for treatment for a broken nose received while in jail and, while there, he escaped by cutting his chains. He was to have been tried jointly with his brother, Stephen Davis. On the date set for the trial, Stephen appeared but Randal was still at large and did not appear. At the State's request, the trial proceeded against both Stephen and Randal—the latter being tried in absentia, under Rule 231, Rules of Criminal Procedure. Both defendants were represented by the same counsel. Both defendants were found guilty by the jury, and Randal Davis was then found guilty of the two prior convictions.

The first question certified is:

"Is trial in absentia pursuant to criminal rule 231, Rules of Criminal Procedure, Arizona Revised Statutes, a violation of the Defendant's right to be present at his trial, to confront his accusors, to cross examine the witnesses, to have a public trial, to aid in the selection of the jury, to have compulsory process for obtaining witnesses in his behalf, to have effective assistance of counsel, and to testify in his own behalf?"

We have repeatedly held that a defendant who is voluntarily absent from his trial, waives his right to be present and may be tried in absentia. State v. Taylor, 104 Ariz. 264, 451 P.2d 312.

Defendant argues (a) that there is no proof that his absence was voluntary, and (b) that there is no proof that he knew that the trial could proceed in his absence. (a) is completely answered by our opinion in State v. Tacon, 107 Ariz. 353, 488 P.2d 973, in which we clearly stated:

"Once a defendant's knowledge of the trial date is shown, the defendant has the burden of persuading the court that his absence was not voluntary."

With reference to (b), the following language in *Tacon, supra,* lends some support to defendant's position:

"In order for a defendant to make a knowing and intelligent waiver of his. right to be present at the trial, he must be aware that the trial will proceed without him if he fails to appear."

This was pure dictum, and upon closer analysis the error in that statement

is apparent. It is true that a waiver is a voluntary relinquishment of a known right and, without knowledge of a right, there can be no waiver. But the right to try a defendant in absentia rests upon his waiver *of his known right to be present, not upon the (possibly unknown) court's right to try him while absent.* Here, defendant knew that he had a right to be present and has failed to show that he did not voluntarily elect to waive that right.

The second question certified is:

"Is the enhanced sentence required by 36–1002.07, paragraph c, Arizona Revised Statutes unconstitutional in imposing a minimum term from ten years to life in the State Prison when two previous convictions described in 36–1002 have been alleged and proven, as being 'cruel and unusual punishment', or does the trial Court have inherent power to strike or dismiss said prior convictions and treat the Defendant as a firt [sic] time offender if the trial court feels it so requires."

■ This is really two questions in one. We answered the second part in State v. Valdez, 48 Ariz. 145, 59 P.2d 328 (overruled on another point in State ex rel. Morrison v. Superior Court, 82 Ariz. 237, 311 P.2d 835) where we held:

"[I]t was the duty of the trial court to sentence defendant to imprisonment for a term of not less than ten years. And the statute does not say that he '*may*' receive the increased punishment, but expressly states 'the punishments herein prescribed *must* be substituted for those prescribed for a first offense if the previous conviction is charged in the indictment or information and found by the jury.' "

We attach no significance to the fact that the recidivist statute now in effect (A.R.S. 13–1649) reads "shall be substituted."

In *Valdez* we cited the United States Supreme Court [Graham v. Weeks, 138 U.S. 461, 11 S.Ct. 363, 34 L.Ed. 1051] for the following statement:

"[A] judgment rendered by a court in a criminal case must conform strictly to the statute, and . . . any variation from its provisions, either in the character or the extent of punishment inflicted, renders the judgment absolutely void."

The answer to the first part of the second question is more complex; i. e., whether a minimum sentence of ten years is a cruel and unusual punishment. We must consider the evolution of punishments. In Old England the punishment for treason was being drawn and quartered, which is now considered cruel and unusual in every civilized country. The definition of "cruel and unusual punishment" is presently in a state of flux. The death penalty for centuries has *not* been considered to be cruel or unusual, but recently it has been attacked on precisely that ground, and the United States Supreme Court will soon decide the question. The Supreme Court of California has already held the death penalty to be cruel and unusual punishment. People v. Anderson, 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880.

While we may not agree with many of the conclusions of the California court, we do agree that the "cruel and unusual punishment" phrase in both the United States Constitution and the Arizona Constitution is a dynamic rather than a static provision. In a proper case and at a proper time we may find a particular penalty so severe as to shock the conscience of society and require a holding that it violates the constitutional mandate. Such holdings will have to be made on a case-by-case approach which will conform to the general mores of society at the time of the decisions.

Pending the ultimate determination of exactly what deleterious effects flow from the use of marijuana, the hue and cry of users, sympathizers, and some sociologists, have brought about reductions in the penalties for the drug's possession in many jurisdictions. However, in Arizona the law setting the punishment in the instant case is found in A.R.S. § 36–1002.07, subsec. C, which provides that an offender who has

been convicted of the importation or transportation of marijuana and of having had two prior felony convictions, shall be sentenced to a term of imprisonment of ten years to life with no possibility of parole until he has served a minimum of ten years.

The punishment is not for just the marijuana offense, but rather for committing that offense *after* having previously committed two felonies. In our opinion, the evolution of the meaning of the words "cruel and unusual punishment" has not yet reached the point where it shocks the collective conscience of society to imprison a man for ten years for a third felony conviction. If such punishment is deemed too severe, it is a defect to be remedied by the legislature rather than by the courts. Until such remedy is consummated, it is the prerogative of the legislature to set the punishment for the crimes it defines, and the duty of the courts to impose the punishments that are specified.

Ordered remanding to the trial court for further proceedings not inconsistent herewith.

CAMERON, V. C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.