588 P.2d 830

**STATE of Arizona, Appellee,**

v.

**Richard Nunez PACHECO, Appellant.**

**No. 4375.**

Supreme Court of Arizona,
En Banc.

Nov. 22, 1978.

John A. LaSota, Jr., Atty. Gen. by William J. Schafer, III and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Stewart & McLean by William H. McLean, Phoenix, for appellant.

HAYS, Justice.

This is an appeal by Richard Nunez Pacheco from his conviction and sentence under A.R.S. §§ 36–1001, 36–1002.02 and 36–1002.07 for transportation of a narcotic drug and transportation of marijuana, each with a prior felony conviction. We have jurisdiction pursuant to 17A A.R.S. Supreme Court Rules, rule 47(e). We affirm.

Pacheco raises four issues on appeal:

1.  whether the warrantless search of a package in the possession of a common carrier was lawful;
2.  whether mandatory minimum sentences under the recidivist provisions of A.R.S. §§ 36–1002.02 and 36–1002.-07 constitute cruel and unusual punishment;
3.  whether Pacheco's admission on the stand of a prior felony conviction is sufficient evidence of a prior felony conviction to create a jury question, and if so whether his conviction under the Federal Youth Corrections Act may properly be used as the basis for *sentencing under the recidivist provisions of A.R.S. §§ 36–1002.02 and 36–1002.07;* and
4.  whether Pacheco's trial counsel was so ineffective as to constitute a denial of the right to counsel.

## THE SEARCH

Pacheco entered the bus depot in Phoenix with a package to be shipped to Kingman about fifteen minutes before the bus was scheduled to depart. He handed a small wrapped box to the package counter employee (employee). The employee testified that Pacheco appeared very nervous, refused to give his return address, and gave only his first name. The employee placed the box in an "express package envelope" and sealed it. Pacheco then left.

The circumstances of the transaction caused the employee to become suspicious of the package's content. He opened the package and found it contained a green leafy substance and a small balloon. He the closed the box, put it back in the envelope, placed it in a locker and called the police.

About an hour later (after the bus had left), a policeman arrived and took the package from the locker. He then opened the package and found it contained a sub-

stance which was later determined to be marijuana. It also contained a small balloon filled with a powder which was later found to be heroin. It is undisputed that the officer had probable cause to open the package and that he had not obtained a search warrant before hand.

■ Searches conducted without a warrant even if based on probable cause are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219–20, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854, 858 (1973). One such exception is present when valid consent to the search has been obtained. *Id.*

■ We held in *State v. Fassler*, 108 Ariz. 586, 591, 503 P.2d 807, 812 (1972), that "common carriers may search parcels entrusted to them when they have reason to believe the parcels contain contraband . . . ." They may also consent to such a search by the police. *Id.* We find that the facts of this case fall squarely within the holding of *Fassler, id.*, and that the search in question was therefore reasonable.[1]

## MANDATORY MINIMUM SENTENCES

■ Pacheco also challenges his sentencing under the recidivist provisions of A.R.S. §§ 36–1002.02 and 36–1002.07 as violative of the cruel and unusual punishment prohibition of the eighth amendment. We do not agree.

In *State v. Espinosa*, 101 Ariz. 474, 421 P.2d 322 (1966), we upheld A.R.S. § 36–1002.02 as not violative of the constitutional prohibition against cruel and unusual punishment. There, we held that " '[a]s long as the punishment is approximately proportionate to the type of crime and not so severe as to shock the moral sense of the community, its extent is necessarily within the discretion of the legislature.' " *Id.* at 477, 421 P.2d at 325. We do not believe that the increased penalty applied under this statute to those who have prior felony

convictions is either disproportionate to the crime charged or is so severe as to shock the moral sense of the community.

In *State v. Davis*, 108 Ariz. 335, 498 P.2d 202 (1972), we upheld A.R.S. § 36–1002.07 against the same attack. There, we noted that "[i]n a proper case and at a proper time we may find a particular penalty so severe as to shock the conscience of society. . . . Such holdings will have to be made on a case-by-case approach which will conform to the general mores of society at the time of the decisions." *Id.* at 337, 498 P.2d at 204. We then concluded that A.R.S. § 36–1002.07 did not shock the "collective conscience of society." *Id.* at 338, 498 P.2d at 205. We still do not believe it does. We therefore conclude that both A.R.S. §§ 36–1002.02 and 36–1002.07 are constitutional.

## PRIOR CONVICTION

Pacheco argues that since no documentary evidence of his prior conviction was ever offered or admitted into evidence, his conviction under A.R.S. §§ 36–1002.02 and 36–1002.07 must be overturned. We disagree.

■ Although no *documentary* evidence was offered or admitted into evidence, Pacheco testified during his trial that he had a prior felony conviction for the same crime alleged, on the same date alleged, and at the same place alleged. We held in *State v. Seymour*, 101 Ariz. 498, 500, 421 P.2d 517, 519 (1966), that a former conviction may be sufficiently established by the accused's admission while testifying in court. Pacheco's admission on the stand was sufficient to establish his prior conviction.

■ Pacheco also argues that even if his in-court admission of the prior conviction was sufficient to create a jury question, his prior conviction must not be regarded as such for purposes of sentencing under A.R.S. §§ 36–1002.02 and 36–1002.07, since his conviction was under the Federal Youth Corrections Act (Youth Act), 18 U.S.C. § 5005 *et seq.* (1970). The purpose of

1. *Cf. United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), where a footlocker was taken from the possession of the defendants who obviously did not consent to a search, not from the possession of a common carrier who did, as in this case.

the Youth Act is to give the youthful offender who has completed his sentence and received a certificate of vacation of conviction a second chance and a clean record. *United States v. Fryer*, 545 F.2d 11, 13 (6th Cir. 1976). A youthful offender who has had his conviction vacated may not be sentenced under a recidivist statute using a conviction under the Youth Act as the prior conviction, since such sentencing would offend the very purpose of the Act. *Id.* at 13–14. However, Pacheco is in no position to challenge the use of his Youth Act conviction under the recidivist provisions of A.R.S. §§ 36–1002.02 and 36–1002.07 since he neither alleged nor proved that he had completed his sentence under the Youth Act nor that he had ever been issued a certificate of vacation of conviction pursuant to 18 U.S.C. § 5021(b) (1970).[2]

## EFFECTIVENESS OF COUNSEL

Pacheco claims that counsel who represented him before and at his trial was so ineffective that he was denied the right to counsel guaranteed by the sixth amendment of the United States Constitution and by article II, section 24 of the Arizona Constitution. We do not agree.

◾ In Arizona, a conviction must be set aside if the representation afforded by counsel is so ineffective that it can be characterized as amounting to a "farce or a sham." *State v. Kruchten*, 101 Ariz. 186, 197, 417 P.2d 510, 521 (1966), *cert. denied*, 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967). The burden of such showing is on the one so alleging. *State v. Daniel*, 25 Ariz.App. 592, 593, 545 P.2d 440, 441 (1976).

*Failure to Object to Prior Conviction*:

◾ The County Attorney moved to amend the information following its filing to allege a prior conviction. Counsel for Pacheco never opposed that motion. In addition, several months later when the trial commenced, counsel had done no research regarding the prior conviction.

Assuming that the failure to oppose the motion was intentional, such decisions, made during the course of litigation, are judgmental in nature. Although opposing the motion might have been preferable in retrospect, we have previously held that matters of judgment or tactics will not be reviewed in the harsh light of hindsight. *State v. Watson*, 114 Ariz. 1, 14, 559 P.2d 121, 133 (1976), *cert. denied*, 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *State v. Pietsch*, 109 Ariz. 261, 263, 508 P.2d 337, 339 (1973). On the other hand, if the failure to oppose the motion was an oversight by counsel, such conduct is inexcusable. Nonetheless, if Pacheco was not prejudiced thereby, a new trial is not warranted. We do not believe Pacheco was prejudiced by counsel's failure to oppose the motion since the state was still required to prove the prior conviction beyond a reasonable doubt and since we have concluded above that the youth conviction was properly used.

Counsel's apparent lack of preparation is also inexcusable. There is no question that counsel should have been prepared to argue the issue when his client was arraigned. However, we do not find that his lack of preparation resulted in prejudice to Pacheco since, as we just indicated, the state was still required to prove beyond a reasonable doubt that Pacheco had a prior felony conviction and since we have already concluded that Pacheco's prior conviction was properly used as a basis for sentencing under A.R.S. §§ 36–1002.02 and 36–1002.07.

*Motion to Suppress*:

Pacheco claims that counsel failed to represent him effectively by not making an adequate motion to suppress the evidence obtained by the search and seizure discussed earlier in this opinion. Although counsel did make a "Motion to Suppress Tangible Evidence" prior to the trial, the motion did not specifically describe the evidence sought to be suppressed, nor was it supported by a memorandum of points and authorities. No hearing was ever held on the suppression issue.

2. In fact, the record shows that at the time of his arrest on the above offenses, Pacheco was in federal custody for violating the parole which was part of the Youth Act sentence.

Based on these facts alone, Pacheco claims he is entitled to a new trial citing *State v. Lopez*, 3 Ariz.App. 200, 412 P.2d 882 (1966). *Lopez* holds that when counsel's ineffectiveness "results in the withdrawing of a crucial defense from the case," the right to counsel has been denied. *Id.* at 204, 412 P.2d at 886. We find *Lopez* inapposite. There, counsel had altogether failed to challenge the admissibility of evidence. *Id.* at 205, 412 P.2d at 887. Here, on the other hand, counsel moved for its suppression, although rather ineptly. More importantly, he strongly objected to admission of the evidence at trial. Although we agree that "[t]here are times when failure to move to suppress evidence can result in the trial being a sham or farce," *State v. Phillips*, 16 Ariz.App. 174, 175, 492 P.2d 423, 424 (1972), we find no such result in this case. Counsel's ineffectiveness did not result in the "withdrawing [of] a crucial defense" as was the result in *State v. Lopez, supra*.

*Motion to Suppress Identification*:

Counsel filed a "Motion to Suppress Identification" prior to the trial. This motion referred to the identification of a photograph of Pacheco by the bus employee. A hearing was held but was continued upon request of Pacheco's counsel. It was never concluded.

If the failure to continue the hearing was intentional on counsel's part, it was a judgmental decision and we will not now attempt to second-guess him. *State v. Watson, supra*. Even if we assume that the discontinuance of the hearing was an oversight by counsel, we do not see, nor does Pacheco now assert, any legitimate argument which counsel could or ought to have made at this hearing. Having reviewed the record of the hearing, we find nothing in the identification proceeding that could have supported a good-faith motion to suppress. We therefore find no prejudice resulting from counsel's omission.

*Motion to Compel Identification of Informant*:

Prior to the trial, counsel moved for an order to compel the state to disclose the identification of an alleged informant. He avowed he would produce evidence and witnesses to prove the informant's existence but later failed to do so. We do not find on these facts that Pacheco was denied effective counsel. First, Pacheco has neither alleged nor shown on appeal that any informant existed. Even if one did exist, Pacheco has not shown he was prejudiced by nondisclosure of his identity. Second, it may well have been a tactical decision not to later produce the evidence of such an informant, even if such evidence existed.

*Failure to Make Proper Objections*:

Counsel failed to object to several questions by the state regarding drug activity of certain companions of Pacheco. Pacheco claims that this omission prejudiced his case.

Although the instances pointed out by Pacheco would have been susceptible to objection, Pacheco's defense was that these companions had framed him by placing drugs in the package which he believed contained another item. It was to his benefit to show that these companions had access to drugs, that they were users, and that their drug activity gave them a possible motive for planting the drugs on Pacheco, *i. e.*, to inform on Pacheco, thereby hopefully gaining favor with the police. In any case, the decision to object or not object is a difficult tactical decision and we will not now second-guess counsel. *State v. Watson, supra*.

*Failure to Timely Prepare*:

Pacheco claims that counsel had interviewed a defense witness only one day before he called her to testify and that he was therefore not adequately prepared to question her at trial.

Although such late preparation is inadvisable, the record shows that this particular witness was used very effectively by counsel at trial and that through her testimony counsel presented the only viable defense Pacheco had. The record also shows that counsel had employed an investigator who

had previously interviewed this witness and discussed the interview with counsel. The record does not support the contention that counsel was unprepared for trial.

*Discussion of Case with Pacheco :*

Counsel interviewed Pacheco only five times in preparation for the trial. Pacheco claims that counsel was therefore not adequately prepared to defend the case.

Undoubtedly, almost any attorney could spend more time preparing for any given trial and this trial was no exception. However, we do not think that this allegation, even if true, is so serious as to require a conclusion that the trial was a sham. The record shows that counsel hired a private investigator who had spent much time interviewing not only possible defense witnesses, but also Pacheco himself. It also shows that counsel put on a forceful defense which, had the jury believed it, would have been sufficient to free Pacheco. The record does not support the contention that counsel was unprepared for the trial.

*Failure to Explain to Pacheco that the Decision to Testify was His :*

Counsel allegedly never explained to Pacheco that the decision to testify was Pacheco's nor did he explain the pro's and con's of taking the stand.

Although counsel obviously should inform his client that it is the client's decision whether he will take the stand, Pacheco has not shown that any prejudice to his case resulted from taking the stand or if it did, that it outweighed the benefit to his case resulting therefrom. In fact, the only detrimental effect from his taking the stand was that he admitted his prior conviction, thus alleviating the necessity of further proof. However, the record shows that the state had the documentary evidence necessary to prove the prior conviction had Pacheco not admitted it. We do not find that Pacheco's case was prejudiced by counsel's alleged omission.

In conclusion, looking at the entire record and considering each allegation of ineffectiveness of counsel, we find that Pacheco's

trial was not reduced to a farce or a sham. Nor does our inspection of the record pursuant to A.R.S. § 13–1715 reveal any fundamental error.

The judgment of conviction and the sentence are affirmed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HOLOHAN, J., concurring.

GORDON, Justice (concurring in part, dissenting in part):

Although I concur with the majority's disposition of the other issues presented in this decision, I must disagree with its treatment of defendant's Eighth Amendment challenge to his mandatory minimum sentences. In light of a line of United States Supreme Court cases beginning with *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1909), and culminating in *Coker v. Georgia,* 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), I believe that an analysis of relevant objective factors is constitutionally mandated whenever a criminal penalty is properly presented for Eighth Amendment scrutiny. *See also Trop v. Dullies,* 356 U.S. 86, 78 S.Ct. 590, 21 L.Ed.2d 630 (1958); and *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

> As the Court said in *Gregg v. Georgia :* "[T]he Eighth Amendment has not been regarded as a static concept. \* \* \* '[t]he Amendment must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.' (Citation omitted.) Thus, an assessment of contemporary values concerning the infliction of a challenged sanction is relevant to the application of the Eighth Amendment. \* \* \* *[T]his assessment does not call for a subjective judgment. It requires, rather, that we look to objective indicia that reflect the public attitude toward a given sanction."* (Emphasis added.) 428 U.S. 153, 172, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859, 874 (1976).

The majority reaches the conclusion that defendant's penalty does not "shock the

moral sense of the community" without discussion of relevant objective indicia of community standards. Such objective information was amply supplied in defendant's opening brief. Thus, defendant properly provided the tools for undertaking an objective analysis to ascertain community standards, and this Court could and should have accomplished the task. Without such an analysis, the decision is indeed a subjective judgment, reflecting merely what is shocking to the conscience of the Court, rather than to the community.

I do not reach the question whether appellant's sentences should be deemed violative of the Eighth Amendment if this Court were to perform the required objective analysis.