533 P.2d 665

**The STATE of Arizona, Appellee,**

v.

**Manuel Robert RAMIREZ, Appellant.**

**No. 2937.**

Supreme Court of Arizona,
In Banc.

March 31, 1975.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Frank T. Galati, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the charge of as-

sault with a deadly weapon, A.R.S. § 13–249 as amended, and a sentence thereon of not less than ten nor more than twenty years in the Arizona State Prison.

We are asked to answer the following questions on appeal:

1. May the provision of A.R.S. § 13–1621(E) which provides for a hearing before trial following the appointment of medical experts to determine whether defendant is capable of standing trial be waived on the part of the defendant or his counsel by failure to protest proceeding to trial?

2. Was the defendant entitled to a directed verdict of acquittal by reason of insanity when the State did not present any evidence to rebut defendant's evidence of insanity?

3. Was the defendant deprived of a fair trial by the misconduct of the prosecutor in closing argument in which he referred to matters not in evidence and argued that the defendant did not call certain named witnesses?

4. Was it reversible error for the trial court to replay instructions to the jury without notice to the defendant or counsel and in the absence of the defendant and counsel?

5. Was it denial of defendant's right to speedy trial under the Sixth Amendment when there was an eight month delay between the jury verdict and the imposition of sentence?

6. Was the sentence of ten to twenty years excessive or an abuse of the trial court's discretion?

The facts necessary for a determination of this matter on appeal are as follows. On the afternoon of 25 November 1972, Pauline Vigil, the sister of the defendant, and Anna Ramirez, defendant's wife, and the children of Pauline and Anna, numbering nine in all, spent the afternoon at defendant's house. About 5:00 in the evening they went to the home of defendant's mother. After Pauline, Anna and the children returned to defendant's house, defendant returned home. Someone came to the door to talk to him. This person and defendant then left. After dinner Pauline Vigil, Anna Ramirez and the children, went for a ride and visited another sister of defendant. As they returned to defendant's house, the defendant was standing outside. He walked over to the car and told Anna Ramirez "don't get down." Pauline asked "What's the matter?" and the defendant wouldn't speak to her. Anna opened the door but did not get out of the car. Anna said "Let's go, there's something wrong." The defendant stood there for awhile and according to the testimony his appearance was "funny." He went inside the house as Pauline was backing out of the driveway. Defendant came back out of the house with a rifle and two shots were fired, one hitting the ground under or near the car and one breaking the glass in the car and hitting 10 year old Jayne Vigil. She died in the hospital a few hours later.

Defendant was arrested and charged with the murder of Jayne Vigil and assault with intent to commit murder upon Anna Ramirez, his wife.

After a trial to the jury, the jury returned a verdict of guilt as to the charge of assault with a deadly weapon, but were unable to agree upon a verdict as to the charge of murder. The court upon its own motion declared a mistrial as to the murder charge, but entered judgment on the verdict of guilty of assault with a deadly weapon and imposed a sentence of not less than ten nor more than twenty years in the Arizona State Prison.

## COMPETENCY TO STAND TRIAL

On 17 January 1973, the court appointed two psychiatrists to examine the defendant. The doctors were directed to file written reports with the court. The defendant was ordered committed to the Arizona State Hospital for observation and examination. On 26 February 1973, the court made a

minute entry order releasing the defendant from the hospital and reinstating his bond. The doctors' reports were not filed as part of the record. On 8 March 1973 the court entered another minute entry order as follows:

"The Court having heretofor appointed impartial medical experts to examine the defendant pursuant to § 13–1621 A.R.S., and the examinations having been completed the Court having received written reports and the parties having stipulated to submit for decision by the court the issue of defendant's mental condition to stand trial on the basis of the written reports in lieu of an evidentiary hearing, and good cause appearing IT IS THE FINDING OF THE COURT that the defendant is able and does now understand the nature of the proceedings against him and is now able to assist counsel in his own defense. IT IS THEREFORE ORDERED setting the cause for trial to a jury at 10:00 a. m. on April 16, 1973, Division A."

The defendant having stipulated to this procedure did not protest the failure to hold a hearing, did not ask for one, and proceeded to trial without further complaint. He raised this issue for the first time on appeal.

A.R.S. § 13–1621, subsection E, provided at that time:

"Immediately after the examinations by experts contemplated by subsections C and D of this section, the court shall hold a hearing to determine, on the basis of the expert testimony, including the evaluation, report and testimony of an official of the institution to which the defendant may have been committed, plus any other evidence regarding the defendant's mental condition introduced by either party, whether the defendant is able to understand the proceedings against him and to assist in his own defense. The parties may, by stipulation, waive oral testimony at this hearing."

■ We have held that a hearing (meaning a judicial determination) is mandatory under A.R.S. § 13–1621; State v. Sanders, 110 Ariz. 503, 520 P.2d 1127 (1974). But we have also held that an oral hearing can be waived. State v. Meredith, 106 Ariz. 1, 469 P.2d 820 (1970). We believe the following is dispositive of this question:

"We are impressed by the facts that no protest whatsoever was made by defense counsel before going to trial, no objection or motion for a new trial was made because of the failure of the court to hold the required hearing, and that there is no claim by counsel and no suggestion arising from the record that the appellant was unable to understand the proceedings and to assist counsel. The present claim in this court for reversal is the first time the question has been raised.

"We think appellant's claim of error is technical and without merit." State v. Cobb, 110 Ariz. 578, 521 P.2d 1124, 1125 (1974).

We find no error.

## TESTIMONY REBUTTING DEFENDANT'S EVIDENCE OF INSANITY

The defendant next contends that there was evidence of defendant's insanity and that since the State did nothing to rebut this evidence, the defendant was entitled to a directed verdict of acquittal. This court, in a case wherein the defendant presented the testimony of two doctors which created a substantial and reasonable doubt as to the defendant's sanity and in which there was no competent evidence to support the trial court's rejection of the insanity defense, reversed the matter stating:

"The law in this jurisdiction as to the test of sanity is well settled. Since there is a presumption of sanity, the defendant must introduce evidence which generates a doubt thereof. The burden then shifts to the State to prove sanity beyond a reasonable doubt. (citations omitted)
* * *

* * * * * *

"The testimony of Dr. Winn and Dr. Almer created a substantial and reasonable doubt as to defendant's sanity on the

date the crime was committed. The positive testimony of these two doctors was not rebutted by Dr. Cleary, who refused to draw any conclusion as to defendant's sanity on August 3, 1969." State v. Begay, 110 Ariz. 200, 200–01, 516 P.2d 573, 573–4 (1973).

In the instant case, even though the defendant entered a plea of not guilty by reason of insanity, the only testimony presented at trial concerning the possible insanity of the defendant was that of Pauline Vigil, the defendant's sister, who claimed that he was insane at the time he shot and killed her daughter. Pauline testified:

"Q Did he appear to look normal to you?

"A No.

"Q Did he appear to know you or Anna at that time?

"A No. I said that before, he didn't—I don't think he recognized—like he was seeing something else or something.

"Q Did he appear to you to be legally insane?

"A Probably, because I told the policeman that, 'I think my brother went crazy'."

Even if we assume that Pauline Vigil's testimony raised a substantial and reasonable doubt as to the defendant's sanity, and we do not believe it did, there was sufficient testimony by other witnesses to rebut Pauline Vigil's testimony that defendant was insane. The testimony viewed as a whole was sufficient from which the jury could find that the defendant was not insane at the time of the shooting. We find no error.

## MISCONDUCT OF THE PROSECUTOR

Defendant moved for a mistrial on the grounds that the prosecutor was guilty of misconduct in his alleged reference to matters not in evidence and to his comments that the defendant did not produce witnesses which he said he would produce. The defendant did not take the stand and testify himself.

Defendant's counsel, in his opening statement, stated:

"MR. POLLOCK: Ladies and gentlemen: It's difficult for the defendant to present material in this case because, of course, as you may have deduced earlier, the defendant does not know what occurred on that occasion, and we will present considerable testimony to that effect.

You will find, most interestingly, the people that believed the defendant did not know what occurred on that occasion; including not only his wife, not only his mother, not only the children, but the mother of the deceased, who will testify in his behalf; that when they pulled into the driveway and they said hello, Manuel said that he didn't know who they were.

We will also show you that testimony of Dr. Tuchler and Dr. Wellish; that the defendant didn't know what he was doing, the nature and quality of the acts, that in fact probably thought he was shooting at animals."

Although the prosecutor had subpoenaed Anna Ramirez, defendant's wife, she was not called to testify by either the State or the defendant. The defendant did not call other witnesses he said he would call including his mother or the doctors. The prosecutor in making certain remarks as to witnesses the defendant did not call merely responded to defendant's opening statements. We find no error.

## REPLAYING THE INSTRUCTIONS IN THE ABSENCE OF DEFENDANT AND COUNSEL

Prior to the beginning of the jury's deliberations the court stated to the jury in the presence of counsel:

"I have tape recorded the instructions. If you need them replayed to you, they will be made available to you in that form."

After the jury had deliberated for a period of time outside the presence of counsel and the defendant, the instructions previously recorded were played back to them. Later the record reflects:

"THE COURT: In chambers with counsel for the State and Mr. Lemberg for the defendant.

The Court has received a written note from the foreman of the jury, which states as follows:

Quote:

'Can we obtain a written copy of Judge LaPrade's definition of murder 2, voluntary manslaughter, involuntary manslaughter.'

Let the record show that while they were deliberating, the Court has already caused to be played, from beginning to end, all of the instructions on the tape recorder, as required at the time the instructions were delivered verbally to the jury."

Rule 281 of the 1956 Rules of Criminal Procedure, 17 A.R.S., in effect at the time of the trial in this matter provided:

"After the jurors have retired to consider their verdict, if they desire additional instruction upon any point of law arising in the action or to have any testimony about which they are in doubt or disagreement read to them, they shall upon their request be conducted into the courtroom by the officer who has them in charge and the court shall give them such additional instruction or shall order such testimony read to them. Such instruction may be given and such testimony read only after notice to the county attorney and counsel for the defendant."

Although we have stated that it is error to communicate to the jury out of the presence of counsel and the defendant, State v. Werring, 111 Ariz. 68, 523 P.2d 499 (1974), and that the defendant is not required to show prejudice, State v. Burnetts, 80 Ariz. 208, 295 P.2d 377 (1956), we have also stated that:

"Rule 231, Par. A. 4., Rules of Criminal Procedure, 17 A.R.S. provides that the defendant shall be present at all proceedings when the jury is present. While its language is broad, we do not believe that this rule proscribes the court's playing back of the taped instruction to the jury when defendant was not present, in the absence of a showing that it was prejudicial. * * *" State v. Bustamante, 103 Ariz. 551, 553–54, 447 P.2d 243, 245–46 (1968).

Our decision in Bustamante, supra, however, was set aside by the 9th Circuit Court of Appeals which stated:

"It follows that appellant here had a constitutional right to be personally present in the courtroom when the instructions were replayed for the jury. * * *

* * * * * *

"Having determined that appellant was denied a federal constitutional right, the right to be present in the courtroom at every stage of his trial, the next step is to determine whether that error was harmless. Chapman v. California, supra. If the error was harmless, there is no reason to disturb the conviction. If, however, appellant's absence prejudiced his case, weakened his defense, or was otherwise harmful to his interests, a new trial must be held.

* * * * * *

" * * * The right to be present at trial stems in part from the fact that by his physical presence the defendant can hear and see the proceedings, can be seen by the jury, and can participate in the presentation of his rights. But the right also rests upon society's interests in due process. As stated in Hopt, supra, [Hopt v. Utah], '[t]he public has an interest in [the defendant's] life and liberty. Neither can be lawfully taken except in the mode prescribed by law'. 110 U.S. [574] at 579, 4 S.Ct. [202] at 204, [28 L.Ed.2d 262]. The defendant's right to be present at all proceedings of the tribunal which may take his life or liberty is de-

signed to safeguard the public's interest in a fair and orderly judicial system. The presence of counsel alone at trial can never be harmless *per se*.

"We are unable from the record before us to determine whether the error was harmless. We have been told only that a tape recording of the original instructions was replayed in the courtroom in the presence of the jury, a new judge and counsel. The record does not disclose what, if anything, the judge said to the jury, or the contents of any other dialogue which may have transpired. We certainly cannot assume that nothing was said. Nor does the record show whether the tape recording was a full, complete and accurate recording of the original instructions, whether the jury could hear it, or even whether all members of the jury were present. These are crucial questions which must be answered.

"We, therefore, reverse and remand to the district court for further proceedings. * * *" Bustamante v. Eyman, 456 F.2d 269, 273, 274–75 (9th Cir. 1972).

But see, Dissent of Judge Trask at 275 of 456 F.2d.

█ The matter will have to be remanded to the trial court for a hearing to determine what occurred and what was said in addition to the playing of the taped instructions. A record of said hearing will be made and the reporter's transcript certified to this court in order that we may determine whether the error of playing the instructions to the jury without the presence of the defendant or his counsel was harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L.Ed.2d 705 (1967); Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

## SPEEDY TRIAL

Defendant next contends that it was a denial of his right to speedy trial when there was an eight month period of time from conviction to imposition of sentence. Sentencing in the instant case was postponed in part until such time as the murder charged could be disposed of which itself was delayed because of the illness of the trial judge. The sentence herein was on 5 February 1974 and the defendant was not found guilty of the murder charge until 9 April 1974.

After the defendant was found guilty, the judge, knowing that the defendant would have to stand trial on the murder charge declined to set a date for sentencing, announced "The defendant may remain free on his bond pending a new trial date in Cause 74108." Defendant did not object to this procedure and did not ask for an early sentencing.

█ We do not find that after a verdict of guilty when the defendant is released on bond there is a violation of defendant's right to speedy trial by failure to speedily sentence the defendant. In the instant case there was no request for sentencing prior to the time that sentence was actually imposed and we find no prejudice. Neither do we find the case of State v. Rhodes, 104 Ariz. 451, 454 P.2d 993 (1969), cited by the defendant, as applicable to the facts in this case. We find no error.

## EXCESSIVE SENTENCE

█ Lastly, the defendant contends the sentence was excessive and that he was entitled to probation because of the time he was free on bond without incident prior to the sentence. We disagree. The sentence being within the allowable limits there was no abuse of the trial court's discretion. State v. Leon, 104 Ariz. 297, 451 P.2d 878 (1969).

Remanded.

STRUCKMEYER, V. C. J., and LOCKWOOD, HAYS and HOLOHAN, JJ., concur.