541 P.2d 388

**STATE of Arizona, Appellee,**

**v.**

**Daniel Salas VERDUGO, Appellant.**

**No. 3058.**

Supreme Court of Arizona,
In Banc.

Oct. 8, 1975.

N. Warner Lee, Atty. Gen. by R. Wayne Ford, Asst. Atty. Gen., Phoenix, for appellee.

Derickson & Kemper by James Hamilton Kemper, Phoenix, for appellant.

STRUCKMEYER, Vice Chief Justice.

This is an appeal from the Superior Court of Maricopa County in which, after a verdict by a jury for first degree murder, the defendant-appellant, Daniel Salas Verdugo, was sentenced to death pursuant to A.R.S. §§ 13–451 to 13–454.

Three claims of error have been made: (1) that the denial of defendant's motion

for a mental examination was an abuse of discretion; (2) that the finding that defendant created a grave risk of death to another person in addition to the victim is not supported by the evidence; and (3) that the capital punishment statute, A.R.S. § 13–454, is unconstitutional under the Eighth and Fourteenth Amendments.

On July 8, 1974, after arraignment in the Superior Court, a hearing was held on defense counsel's motion for a mental examination of the defendant under Rules of Criminal Procedure, Rule 11, 17 A.R.S. At that hearing, counsel told the court that defendant was below average in intelligence, was a moody person, and was unable to relate events without wandering from point to point. Counsel also stated that defendant was confused "beyond redemption" about the facts and was completely inconsistent in his actions. When pressed by the court for specifics and evidence, counsel related that defendant jumped back and forth in his desire to testify, that he denied having said things in his recorded confession to the police, but that he had no lay witnesses or other evidence to support the motion, other than to place his statements in an affidavit. The court considered counsel's avowals to be the equivalent of an affidavit.

Rules of Criminal Procedure, Rules 11.1 to 11.3, 17 A.R.S. provide that a court shall order a mental examination to determine if a defendant is able to understand the proceedings against him or is able to assist in his own defense or to investigate his mental condition at the time of the offense if reasonable grounds for the need of such an examination exist. We have repeatedly held that, in determining whether reasonable grounds exist, the trial judge is given broad discretion and unless there has been a manifest abuse of discretion the court will be upheld. *See e. g., State v. Bradley,* 102 Ariz. 482, 433 P.2d 273 (1967).

■ This case is similar to that of *State v. Thomas,* 78 Ariz. 52, 275 P.2d 408 (1954). There, defense counsel made a motion for a sanity hearing supported solely by his statement that defendant was unable to remember any of the events concerning the charge of murder, and that counsel had serious doubts as to defendant's sanity. It was there held that the attorney's statement "unsupported by other evidence, was not such reasonable grounds as to require the court to believe the defendant insane * * *." *State v. Thomas, supra,* 78 Ariz. at 56, 275 P.2d at 411. In the case at bar there are only the statements of counsel relating to defendant's low intelligence, moodiness, confusion, and inability to clearly relate the facts involved. Without some other supporting evidence, there was not sufficient evidence to raise a doubt as to defendant's sanity. Our conclusion is further supported by an examination of those Arizona cases in which it has been held that denial of such a motion was erroneous. Those cases involved something more than defense counsel's statements and beliefs. *See e. g., State v. Bradley, supra; Tillery v. Eyman,* 492 F.2d 1056 (9th Cir. 1974).

■ Appellant's second claim of error involves these additional facts. On February 3, 1974, Daniel Salas Verdugo and Robert Gonzales Robin entered the Big Eagle Market, a convenience grocery store in Phoenix. When Verdugo announced their intention to rob the store, the proprietor drew a gun. Shots were fired and Verdugo and Robin fled. Outside, one David Pickett had been using a telephone booth. He testified at the trial that he saw "two guys come running out of the store * * *," and that one had brushed him when he passed and that, after passing about ten feet, one came back, put a gun into his back, told him to get inside, and pushed him into the store. The two men then fled in a car parked at the back of the store, driven by appellant's cousin, David Anthony Verdugo. The proprietor died from the gunshot wounds inflicted.

All three participants were indicted for first degree murder and, in separate trials, all were found guilty. David Verdugo and Robert Robin were sentenced to life im-

prisonment; appellant, Danny Verdugo, was sentenced to death. He argues that the sentence of death is improper, having been based on insufficient evidence.

A.R.S. § 13–454 provides that the trial court shall, after a sentencing hearing, set forth in a special verdict its findings as to the existence or nonexistence of the six aggravating and four mitigating circumstances enumerated in the statute. A sentence of death shall be imposed if the court finds one or more of the aggravating circumstances and no mitigating circumstances "sufficiently substantial to call for leniency." The third aggravating circumstance is:

"In the commission of the offense the defendant knowingly created a grave risk of death to another person or persons in addition to the victim of the offense." A.R.S. § 13–454(E) (3).

The trial court in compliance with the statute in its special verdict found that no mitigating circumstances existed and that only the foregoing aggravating circumstance, of the six specified in the statute, existed. The trial court stated:

"Three, in the commission of this offense, you knowingly created a grave risk of death to another person in addition to the victim of the offense specifically in that, after you had run past him, you returned and, with your gun held in his back, you forced the witness David Pickett back into the store, *which determination is made from your confession, Exhibit 28 and Pickett's testimony.*" (Emphasis supplied)

David Pickett's relevant testimony follows:

"Q. Now, did you notice anything unusual while you were near the phone or at the phone booth?

A. Well, I was standing there looking for a phone number to call the doctor and I heard what sounded like to me was just firecrackers, what I thought.

Q. And did anything unusual happen right after you heard the firecrackers? Did you see anything?

A. Well, then two guys come running out of the store and one brushed me when he passed me, got about maybe ten foot away. Then he turned around and took me back into the store.

Q. Took you back into the store?

A. Yes, Sir.

Q. So, how did he take you back into the store, please?

A. He just put the gun in my back and told me to get inside the store.

Q. And you did what he said?

A. Yes, Sir.

Q. Now, were you armed?

A. No, Sir.

Q. What did you do? What did he do or what happened after you got back into the store or got into the store, put it that way?

A. Then he pushed me to the back of the store. I was going to go out the back door, but I went into the cooler. When I come back out around the meat counter, he was on his way out the door then.

Q. I'm a little bit confused. Perhaps you can clear it up. You say you were going into the meat cooler?

A. See, I went back around the meat counter and was going out the back door, which I thought was the back door because I didn't know and, when I opened the door, it was the cooler. So then I come back and up and I came back around the meat counter and he was going out the door then.

Q. Now, you say two people brushed by you to begin with?

A. Yes, Sir.

Q. And at first were they were running or just walking fast or slowly going out?

A. Well, they was sort of running. Yes.

\* \* \* \* \* \*

Q. Did the person who marched you in at gunpoint, did he say anything to you or did he . . . other than 'Get in the store'?

A. No. He just . . . No. There wasn't any . . . nothing else.

Q. When you said you went towards the back, did he go along with you?

A. No, Sir.

Q. Did he motion to you in any way?

A. He just give me a shove. That was all.

Q. A shove?

A. Uh huh.

Q. In your back or in your front?

A. In the back.

\* \* \* \* \* \*

Q. \* \* \* who did you see come out?

A. The two guys then.

Q. The two men?

A. Um hm.

Q. Were they young or old?

A. They were young. Yes.

Q. Now, you testified that one of them stuck a gun in your back. Could you tell if the other one had a gun?

A. No, Sir. I couldn't."

On cross-examination, Pickett testified:

"Q. \* \* \* I'll ask you if you can identify anyone in this courtroom as having been in the Big Eagle Market on February 3rd, 1974, when you were there at the Big Eagle Market?

A. No, Sir.

Q. I specifically direct your attention to the man seated to the right of me, the defendant, Danny Verdugo. Do you recall seeing him at the Big Eagle Market on that day?

A. No, Sir."

On redirect examination:

"Q. You testified on direct examination, one of the men brushed by you right away? Is that correct?

A. Yes, Sir.

Q. And the other man stuck a gun in your back after he passed you and pushed you into the store?

A. Yes, Sir.

Q. All right. So, you only had a momentary glimpse of these people? Is that correct?

A. Yes, Sir."

This testimony clearly shows that the witness was not only unable to identify the two men who ran out of the store, but which one of the two placed the gun in his back and pushed him into the store.

On May 18, 1974, Verdugo confessed to Detective Barker of the Phoenix Police Department. A tape of that confession was admitted into evidence. The relevant portions follow:

"Barker: Who said, 'let's go?'

Verdugo: Robert,—he was scared as much as I was, man.

Barker: Did you both run out together?

Verdugo: Yes sir, he was in front and I was in back, we got in the car and broke, like I told you man.

Barker: Do you remember running out of that market and running into a man standing at, by the phone booth?

Verdugo: No sir, I don't.

Barker: You grabbed him and you pushed him into, back into the market.

Verdugo: No sir.

Barker: You don't remember that? There was a man there you know.

Verdugo: From what I'm told, I guess there is because of the fact he says that—this is what I hear from my lawyer that there is one. I don't know what you guys got, man. \* \* \*

\* \* \* \* \* \*

Barker: Let's get back to the market, Danny. After you and Robert ran out of the market, what did you do?

Verdugo: I just followed him to the car, got in the car and we broke."

The state recognizes that there is a lack of direct evidence which implicates Verdugo, but argues that since Verdugo was behind Robin as they fled from the store, it is reasonable to assume that had Robin turned and forced Pickett into the store, Verdugo would have seen it and told about it in his confession. Further, the state argues that it is logical to assume the second man to flee the market would be the one who turned back and forced Pickett into the store. We disagree.

We do not think there is a logical inference from the failure to implicate a co-defendant that the confessor must have been guilty of the activity in question. Nor do we think the fact that defendant followed Robin past the phone booth is alone sufficient to draw a conclusion that defendant must have been the one who returned.

The confusion at the scene of the crime, the inconclusive nature of the inferences argued by the state, the denial by the defendant, and the inability of the witness to recognize defendant as one of the men involved shows that the confession and testimony relied upon by the trial court were insufficient to support such a serious decision as that of imposing the death penalty.

In the light of our decision on the second issue, we do not find it necessary to reach defendant's argument as to the constitutionality of Arizona's capital punishment statute.

Appellant's sentence is therefore reduced from death to life imprisonment in the state prison, without possibility of parole until the completion of the service of twenty-five calendar years, A.R.S. § 13–453(A). As so modified, the judgment of the Superior Court of Maricopa County is affirmed.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.