593 P.2d 896

**STATE of Arizona, Appellee,**

v.

**Curtis WILLIAMS, Appellant.**

No. 4372.

Supreme Court of Arizona,
In Banc.

March 20, 1979.

Rehearing Denied April 17, 1979.

John A. LaSota, Jr., Former Atty. Gen., Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Gerald R. Grant, Asst. Attys. Gen., Phoenix, for appellee.

Harold C. Stephenson, Flagstaff, for appellant.

STRUCKMEYER, Vice Chief Justice.

On October 31, 1977, appellant Curtis Williams was adjudged in violation of the terms and conditions of his probation and sentenced to Arizona State Prison. He raises these issues on appeal:

(1) Did the State violate its plea agreement with appellant?

(2) Did the trial court abuse its discretion when it denied appellant's motion to withdraw his guilty plea?

(3) Was the Petition for Revocation of Probation fatally defective and violative of appellant's rights to due process?

(4) Did the State present sufficient evidence to support the Petition for Revocation of Probation?

(5) Was appellant afforded effective assistance of counsel during the proceedings?

(6) Did the trial court violate appellant's constitutional rights when he pled no contest to the first degree burglary charge?

(7) Was the trial court racially biased against defendant?

(8) Was appellant denied due process of law when denied access to a law library?

(9) Did the trial court abuse its discretion in denying appellant's motion for a mental competency hearing?

Appellant and three codefendants were arrested in the early morning hours of July 18, 1976, on charges of first degree burglary and grand theft. On October 3, 1976, while in county jail on these charges, appellant was involved in a scuffle with guards and struck an officer, for which he was charged with aggravated battery. He was also charged with two misdemeanors.

Appellant reached an understanding with the State which resulted in two separate plea agreements concerning all charges against him. The grand theft and misdemeanor charges were dismissed, and appellant agreed to plead no contest to the burglary charge and guilty to the aggravated

battery charge. The agreement on the burglary charge provided that any jail time would be limited to one year in Coconino County Jail. The second agreement provided that appellant would receive the same sentence for the battery conviction as for the burglary charge, and that the sentences would run concurrently.

On November 3, 1976, appellant received a two-year suspended sentence on the burglary charge, and as a condition of probation, one year in jail. He was sentenced pursuant to the plea agreement on the battery charge on November 15, 1976.

A petition to revoke appellant's probation was filed on September 14, 1977, after he was arrested for aggravated assaults of his wife and mother-in-law. Appellant's probation was revoked and he was given concurrent prison sentences of seven to nine years on the burglary conviction and four to five years on the battery conviction.

Appellant claims the State has breached the plea agreements by sentencing him to prison, pursuant to the probation revocation, after he served his time in Coconino County Jail. He claims that it was his understanding that the one year in jail was the final disposition of the case.

The Court of Appeals, in *State v. Fuentes,* 26 Ariz.App. 444, 549 P.2d 224, approved and adopted, 113 Ariz. 285, 551 P.2d 554 (1976), was faced with a similar situation. In the plea agreement reached in *Fuentes,* the State stipulated to a maximum prison sentence of two to three years. Appellant was placed on probation. When his probation was revoked, he received a sentence of eight to ten years in prison. In rejecting appellant's contention that the State breached the plea agreement, the Court said:

"We recognize that under *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the state is bound by plea agreements which induce a plea of guilty. This principle also finds recognition in the provisions of Rule 17.4 e, Rules of Criminal Procedure, which specifically requires that the defendant be given an opportunity to withdraw his plea if the

trial judge rejects the plea agreement or any of its provisions. With these principles in mind, we have reviewed the record, and there is nothing to indicate that the sentencing stipulation contained in the plea agreement was to apply to any post-revocation sentencing. This conclusion is further supported by the fact that at the time defendant was placed on probation, the trial court specifically advised the defendant that if he violated the terms of his probation he could be sentenced 'in accordance with the law', that is, to a term of up to ten years as outlined in the original plea agreement signed by the defendant. * * *" 26 Ariz.App. at 447, 549 P.2d at 227.

In the instant case, the plea agreement on the burglary charge provided:

"The Judge of the Superior Court * * will not be bound by any agreement between the State and the defendant as to what sentence the defendant shall receive, except: [t]he State agrees not to make any recommendation to sentence except that any confinement is to be served within the confines of the Coconino County Jail."

At the sentencing hearing for the burglary charge held on November 3, 1976, appellant's counsel and the prosecutor informed the court that they had reached an agreement on the disposition of all the charges pending against appellant, and stated that as a condition of probation, appellant would not be sentenced to a term of more than one year in county jail. The trial court then entered into the following discussion with appellant:

"THE COURT: Would you have Mr. Williams come forward, please.

Mr. Williams, you have been in the courtroom while Mr. Aspey was explaining your case and these other cases and the Court was making certain statements.

DEFENDANT WILLIAMS: Yes.

THE COURT: Was there anything said that is contrary to what you understand?

DEFENDANT WILLIAMS: All right.

THE COURT: Is that—

DEFENDANT WILLIAMS: Yes, that's it.

THE COURT: —as you understand it?

DEFENDANT WILLIAMS: Yes.

\* \* \* \* \* \*

THE COURT: Mr. Williams, is there anything you want to say to the Court?

DEFENDANT WILLIAMS: No, your Honor.

THE COURT: Mr. Williams, I assume you know what probation is; namely, that if you violate any terms of probation that you could be then sentenced to prison for this charge. Do you understand that?

DEFENDANT WILLIAMS: Yes.

THE COURT: And you could be sent to prison, I believe, for up to ten years. Is that the first degree burglary?

[PROSECUTOR]: It would be up to 15.

THE COURT: Fifteen is the maximum. In other words, notwithstanding the plea agreement which calls for County Jail time, if you violate the terms of probation you could be sent to prison for this original charge. Do you understand?

DEFENDANT WILLIAMS: Yes."

On November 15, 1976, appellant was sentenced on the aggravated battery charge and given the same sentence, to run concurrently, which he received on the burglary charge: namely, two years suspended sentence, with one year in the county jail as a condition of probation. The court reiterated that when appellant was released from county jail, he would still be required to comply with the terms of his probation for the remainder of the two-year term.

■ The written plea agreement is not a paragon of clarity. Nonetheless, the record is clear that appellant knew the consequences of a violation of his probation. The State did not breach the provisions of the plea agreements entered into with appellant.

■ Appellant urges that the trial court abused its discretion when it refused to allow him to withdraw his pleas after his probation was revoked. This claim is based on the previous assertion that the plea agreements were breached when appellant was sentenced to prison. Since we have found that agreements were not breached by the State, we find no legal basis to set aside the revocation for this reason.

The petition for revocation of probation, filed on September 14, 1977, recited as follows:

"Information has come to the Probation Officer that CURTIS WILLIAMS has violated the conditions of his imposition of sentence given November 15, 1976, in that he has failed to comply with the terms in conditions 2 and 4 of his probation:

2. The defendant shall not violate any State, Federal or City laws or ordinances.

The defendant was arrested by the Flagstaff Police Department on September 13, 1977 for two (2) Counts of Aggravated Assault, which resulted in the hospitalization of a 73 year old woman.

4. The defendant shall obey any other reasonable terms and conditions of probation as may be imposed by the Probation Officer.

The defendant failed to leave the premises of the victim in the present action, Francis Beasley, to-wit: the defendant was to take up residence elsewhere and did not;

and it is suggested that he be brought before the Court for hearing in the matter."

Appellant argues that the petition was defective and violative of his due process right to notice because conditions two and four cited in the petition do not match terms two and four of the written conditions of probation signed by appellant.[1]

1. In preparing the petition, the probation officer apparently relied on those terms imposed by the trial court when sentencing appellant on the aggravated battery charge. The conditions were included in a minute entry which was delivered to appellant's counsel, but the record is devoid of any evidence which indicates that appellant received a copy of it.

Rule 27.1, Rules of Criminal Procedure, 17 A.R.S., provides that all conditions of probation shall be in writing, and Rule 27.7(c)(2) provides that probation shall not be revoked for violation of a condition of which the probationer did not receive a written copy. Since it is uncontroverted that appellant did not receive written notice to vacate Frances Beasley Williams' residence, his probation cannot be revoked on that ground. *See State v. Gomez,* 112 Ariz. 243, 540 P.2d 1224 (1975).

Appellant was apprised, however, in his written conditions of probation, that he "shall at all times obey all laws of the State of Arizona and of the United States Government, and of any state where he might be during probation." The petition therefore adequately and reasonably informed appellant of the condition of probation which he violated. We decline to set aside the revocation on technical error. See *State v. Robledo,* 116 Ariz. 346, 569 P.2d 288 (App.1977). Moreover, this Court has repeatedly held that a probation revocation will not be set aside, even where partially defective, if the probationer was given adequate notice of a ground for revocation and the evidence supports the court's action in revoking on that ground. See *State v. Rivera,* 116 Ariz. 449, 569 P.2d 1347 (1977), and cases cited therein.

Appellant urges that the State failed to present sufficient evidence to support the court's finding that appellant had committed an aggravated assault on Mary Ann Rodriquez, appellant's 73-year-old mother-in-law. By Rule 27.7(b)(3), Rules of Criminal Procedure, it is provided that a probation "violation must be established by a preponderance of the evidence."

At the probation revocation hearing, the testimony established that appellant, while engaged in a fight with his wife, struck Mrs. Rodriquez in the face with a radio when she tried to intervene. The evidence clearly establishes that appellant intended to assault his wife and did so, and the record supports the conclusion that appellant did not accidentally strike his mother-in-law. The trial court could conclude from

the preponderance of the evidence that appellant committed two counts of aggravated assault. But had the court accepted appellant's argument that the evidence shows only aggravated battery, the probation revocation would still be proper because from the evidence it is apparent that appellant violated state law, contrary to his written condition of probation.

Appellant urges that throughout the proceedings he was denied the effective assistance of counsel. It has been the rule in Arizona since *State v. Kruchten,* 101 Ariz. 186, 417 P.2d 510 (1966), *cert. denied,* 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967), that a conviction will not be set aside unless the representation by a defendant's lawyer was so ineffective that the proceedings were reduced to a farce, sham or mockery of justice. See *State v. Pacheco,* 121 Ariz. 88, 588 P.2d 830 (1978); *State v. Hall,* 118 Ariz. 460, 577 P.2d 1079 (1978); *State v. Watson,* 114 Ariz. 1, 559 P.2d 121 (1976), *cert. denied,* 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977).

This standard has come under increasing attack, but we recently rejected an attempt to repudiate it. We said in *State v. Watson,* supra:

"In our view, it is the substance of the standard which is significant. As stated by the United States Court of Appeals for the 9th Circuit, 'the constitutional requirement of representation at trial is one of substance, not of form.' *Brubaker v. Dickson,* 310 F.2d 30, 37 (9th Cir. 1962). A defendant is entitled to a fair trial and as a part of that right he is entitled to competent counsel. However, the adequacy of a defendant's representation will not be judged by the harsh light of hindsight. *In re Williams,* 1 Cal.3d 168, 81 Cal.Rptr. 784, 460 P.2d 984 (1969). Nor do mere tactical errors, per se, constitute inadequate representation. *State v. Farni,* 112 Ariz. 132, 539 P.2d 889 (1975); *State v. Lopez,* 3 Ariz.App. 200, 412 P.2d 882 (1966). We have said that '[a] constitutional right to counsel is fulfilled when he is assigned counsel who is a qualified member of the Bar and acts diligently in

the defendant's behalf.' *State v. Meredith*, 106 Ariz. 1, 2, 469 P.2d 820, 821 (1970)." 114 Ariz. at 13–14, 559 P.2d at 133–34.

A review of our decisions shows for the most part that we have examined counsel's representation for competence when employing the farce or mockery of justice standard.

In *Rickenbacker v. Warden, Auburn Correctional Facility*, 550 F.2d 62 (2nd Cir. 1976), *cert. denied*, 434 U.S. 826, 98 S.Ct. 103, 54 L.Ed.2d 85 (1977), the court examined many of the reported cases.

"Rickenbacker invites this court to follow other courts in rejecting the 'farce and mockery' standard. The District of Columbia Circuit, which originated the 'farce and mockery' standard in *Diggs v. Welch*, 80 U.S.App.D.C. 5, 148 F.2d 667, *cert. denied*, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945), has now said that the test is whether the defendant had 'reasonably competent assistance of an attorney acting as his diligent conscientious advocate.' *United States v. DeCoster*, 159 U.S.App.D.C. 326 [331], 487 F.2d 1197, 1202 (1973). The Third Circuit says 'the standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place.' *Moore v. United States*, 432 F.2d 730, 736 (3d Cir. 1970) (*en banc*). The Fifth Circuit has said the test is having 'counsel reasonably likely to render *and rendering* reasonably effective assistance.' *United States v. Fessel*, 531 F.2d 1275, 1278 (5th Cir. 1976). The Sixth Circuit has also adopted this standard. *United States v. Toney*, 527 F.2d 716, 720 (6th Cir. 1975). The Seventh Circuit has said that the attorney's performance must meet 'a minimum professional standard.' *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 640 (7th Cir.), *cert. denied sub nom. Sielaff, Corrections Director v. Williams*, 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975). The Eighth Circuit has said 'the standard would be to test for the degree of competence prevailing among those licensed to practice before the bar.' *Johnson v. United States*, 506 F.2d 640, 646 (8th Cir.), *cert. denied*, 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 659 (1974).

In the context of cases where a defendant claims he pleaded guilty because he had incompetent counsel, the Supreme Court has held that the defendant must show that his attorney's advice was 'outside the "range of competence demanded of attorneys in criminal cases." ' *Tollett v. Henderson*, 411 U.S. 258, 268, 93 S.Ct. 1602, 1609, 36 L.Ed.2d 235 (1973) quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)." 550 F.2d at 65–66. *See also Maryland v. Marzullo*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978) (White, J., dissenting).

The Ninth Circuit Court of Appeals, in *Cooper v. Fitzharris*, 586 F.2d 1325, 1328 (9th Cir. 1978), has concluded that the " 'farce and mockery' standard has been outmoded" and that "reasonably competent and effective representation is a more apt and accurate description of the quality of legal assistance required under the Sixth Amendment."

We note a recent tendency to particularize elements of the minimal performance to be expected of counsel representing a defendant in a criminal proceeding. For example, in *Marzullo v. Maryland*, 561 F.2d 540, 544 (4th Cir. 1977), *cert. denied*, 435 U.S. 1011, 98 S.Ct. 1885, 56 L.Ed.2d 394 (1978), the court quoted from *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968), that:

" 'Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial.' "

The Ninth Circuit said in *Cooper v. Fitzharris*, supra at 1330, "[s]uch a checklist would serve to enhance the objectivity of the general standard."

As the court intimated in *Rickenbacker v. Warden, Auburn Correctional Facility*, supra, it may be that this Court should reconsider the standard originally adopted in *State v. Kruchten*, supra, but we need not decide this issue now. We conclude that the performance of Williams' attorneys did not fail to meet any of the suggested standards.

Williams urges first there was a conflict in interest because the law firm of Aspey, Watkins and Diesel also represented two of appellant's codefendants in the burglary action. At arraignment on the burglary charge, Harold L. Watkins was appointed to represent appellant and his two codefendants. All the defendants pled not guilty. Thereafter, appellant moved to discharge Watkins as his attorney for the reason that he had never asked for counsel and because he felt he was competent to represent himself, having done so on other occasions. The court appointed F. N. Aspey advisory counsel, with whom appellant could consult if he chose to do so. Later, when it appeared that a conflict of interest might arise, Stephen L. Verkamp, a lawyer independent of the firm of Aspey, Watkins and Diesel, replaced Watkins as counsel for the appellant's codefendants. Aspey, at the appellant's request, was appointed to represent appellant and he negotiated the plea agreements on the burglary, grand theft, aggravated battery, and two misdemeanor charges which were eventually entered into.

■ It is well settled that an attorney may represent codefendants in a criminal case until such time as a conflict arises or can reasonably be foreseen. This Court will not presume reversible error unless an actual conflict of interest arises. *State v. Kruchten,* supra. Appellant baldly postulates a conflict of interest in the foregoing facts, but analysis of the evidence does not support his assertion. For the same reason, there was no conflict of interest when appellant was represented by the same firm during the probation revocation proceedings. In both instances, separate counsel were appointed for appellant when a potential conflict appeared.

■ The next claim of ineffective assistance of counsel is somewhat unusual. Louis M. Diesel was appointed to represent appellant after he was charged with probation revocation. Diesel withdrew from the representation of appellant at appellant's insistence and Attorney William Egan was appointed to represent him. Egan appeared on a motion for a mental competency hearing held on October 31, 1977. The motion was denied. Later that day he appeared with appellant when appellant was sentenced on the probation revocation.

It appears that Egan was suspended from the practice of law by this Court on October 17, 1977 for failure to file a lawyer's malpractice insurance questionnaire. He was therefore under suspension during the time he was appellant's counsel. Later, when Egan withdrew, appellant's present counsel was appointed.

The question is not, however, whether Egan's conduct was reprehensible but whether his representation was such that it can be said appellant was denied the effective assistance of counsel. Appellant plainly was not denied the effective assistance of counsel because when the trial court learned of Egan's suspension, it vacated the sentence, had another sentencing hearing, and then resentenced appellant. Any possible prejudice, if such existed, arising out of Egan's representation was cured by the subsequent action of the trial court.

We have read Egan's motion on behalf of appellant for a mental competency hearing and examined the transcript of the hearing on the motion. It is clear that appellant was not incompetent. Nor does appellant argue that he did not receive effective assistance at that hearing. We decline to set aside the probation revocation for this reason.

■ Appellant also claims he was denied effective assistance of counsel when his present attorney withdrew a motion to

withdraw the pleas he entered on the burglary and battery charges over appellant's objection. The motion was refiled two days later and was argued to the court with counsel's assistance. Any possible prejudice was cured by the proceedings two days later.

Appellant sets forth other claims concerning the ineffectiveness of his attorneys. But he fails to support his claims with any specific evidence which suggests even the slightest prejudice resulting from their representation, and neither neglect nor ignorance is present in this case.

■ Appellant contends that his plea of no contest to the burglary charge is constitutionally infirm because the plea was made involuntarily and there was not a factual basis upon which the plea could rest. Appellant's notice of appeal was filed more than one year after he was sentenced on the charge. Where the defendant has failed to appeal from the original judgment of conviction and sentence of probation within the 20-day time limit imposed by Rule 31.3, Rules of Criminal Procedure, 17 A.R.S., this Court will not consider issues directed to claimed infirmities arising prior to the judgment of conviction. See *State v. Fuentes,* supra; *State v. Ingles,* 110 Ariz. 295, 518 P.2d 118 (1974).

Appellant claims that the trial court and his probation officer were racially biased against him. We have reviewed the record in detail and find that his assertion is wholly without merit.

■ Appellant argues that he was denied due process of law because he was not allowed to use a law library to prepare his defense. He asserts that the only law book at the Coconino County Jail which was available to him was an unsupplemented volume of the Arizona Rules of Criminal Procedure.

The United States Supreme Court has held "that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828, 97 S.Ct. 1491, 1498, 52 L.Ed.2d 72, 83 (1977) (footnote omitted). In the instant case, during all the critical stages of the prosecution and probation revocation, appellant was represented by counsel. The lack of access to a law library did not deprive appellant of due process.

The final issue raised on appeal is whether there was an abuse of discretion when the trial court refused to grant appellant's motion for a competency hearing. This claim of error arises out of these facts. On October 31, 1977, after appellant's probation had been revoked and while he was awaiting trial on rape and kidnapping charges, a hearing was held on a defense motion for mental examination under Rule 11, Rules of Criminal Procedure, 17 A.R.S. Appellant's counsel told the court that he believed appellant had drug-related mental problems and was suffering from paranoia. He said that appellant could not remember basic facts and would often change the subject during their discussions.

In ruling on the motion, the trial court stated:

"I do not perceive Mr. Williams to fall in that neighborhood under Rule 11. I have heard him testify in the last month. He has written me a letter which he has indicated by his actions in Court he does understand the nature of the proceedings against him. Whether he can help his counsel or not depends on whether he's willing to tell the truth. If he keeps changing his story, I don't think that's a sign of a mental illness. Therefore, the motion for a mental examination is denied."

In *State v. Verdugo,* 112 Ariz. 288, 289, 541 P.2d 388, 389 (1975), we said:

"Rules of Criminal Procedure, Rules 11.1 to 11.3, 17 A.R.S. provide that a court shall order a mental examination to determine if a defendant is able to understand the proceedings against him or is able to assist in his own defense or to investigate his mental condition at the time of the offense if reasonable grounds

for the need of such an examination exist. We have repeatedly held that, in determining whether reasonable grounds exist, the trial judge is given broad discretion and unless there has been a manifest abuse of discretion the court will be upheld. *See e. g., State v. Bradley,* 102 Ariz. 482, 433 P.2d 273 (1967)."

▮ The trial court did not abuse its discretion. The record shows that while appellant, in the words of the prosecutor, has "a unique perception of the world," he was aware of the proceedings and able to assist in his own defense. There was no evidence other than his lawyer's assertions of peculiar behavior to justify an inference that appellant was not competent to stand trial.

Affirmed.

HAYS and HOLOHAN, JJ., concur.

GORDON, Justice (specially concurring):

I disagree with the majority's disposition of appellant's ineffective assistance of counsel claim. Although I agree with the Court's conclusion that the performance of appellant's attorneys did not fail to meet any of the suggested standards discussed within the opinion, I believe that the "sham and mockery" standard is outmoded and ought to be abandoned in this jurisdiction.

The "sham and mockery" standard originated from interpretation of the requirements of the Due Process Clause of the Fifth Amendment to the United States Constitution, not from the Sixth Amendment Right to Counsel guarantee. *Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974). Subsequently, courts did consider "sham and mockery" the appropriate standard for review of Sixth Amendment claims. *See, e. g., Mitchell v. United States,* 104 U.S.App.D.C. 57, 259 F.2d 787 (1958); *State v. Kruchten,* 101 Ariz. 186, 417 P.2d 510 (1966), *cert. denied,* 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967). A line of cases culminating in *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), however, undercut the premise that the Sixth Amendment mandates nothing

more than appointment of counsel and that counsel's conduct need only pass due process scrutiny. *See, Beasley, supra,* and *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978). *See also United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

Largely in response to *McMann, supra,* most of the circuit courts of appeals have abandoned or modified the "sham and mockery" standard in favor of a less stringent, more objective standard demonstrating inadequacy of counsel: *United States v. DeCoster,* 159 U.S.App.D.C. 326, 487 F.2d 1197 (1973) ("reasonably competent assistance"); *Moore v. United States,* 432 F.2d 730 (3rd Cir. 1970) ("normal competency"); *Marzullo v. Maryland,* 561 F.2d 540 (4th Cir. 1977) ("normal competency"); *Herring v. Estelle,* 491 F.2d 125 (5th Cir. 1974) ("reasonably effective assistance"); *Beasley v. United States,* 491 F.2d 687 (6th Cir. 1974) ("reasonably likely to render and rendering effective assistance"); *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir. 1975) ("expected professional standard of competent counsel"); *United States v. Easter,* 539 F.2d 663 (8th Cir. 1976) ("customary skills and diligence that a reasonably competent attorney would perform under similar circumstances"); *Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir. 1978) ("reasonably competent and effective representation").

These variously worded standards, differing in phraseology but not in substance, comport with the Sixth Amendment requirement suggested by the language of *McMann, supra,* 397 U.S. 759, 770–771, 90 S.Ct. 1441, 1448–49, 25 L.Ed.2d 763, 773:

"Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible * * * depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was *within the range of competence demanded of attorneys in criminal cases.* * * * [D]efendants facing felony charges are entitled to the *effective assistance of competent counsel.*" (Emphasis added.)

*See also Tollett v. Henderson,* 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970).

I believe that the foregoing language in *McMann* indicates that the "sham and mockery" standard is no longer compatible with the quality of legal representation required under the Sixth Amendment. Accordingly, I would adopt the following standard: Counsel must afford defendant reasonably effective representation, within the range of professional conduct customarily expected of an attorney in a criminal case.

It would be impossible to set out in advance and in the abstract a complete list of things that counsel for the defense must or must not do in order to pass constitutional muster. No two criminal cases are identical on their facts. Thus, counsel's preparation for and trial of two different cases are necessarily never identical. As a starting point, however, for the development of clearer guidelines on an ad hoc basis, I would set forth some of the minimal duties owed by counsel to a client in order to afford reasonably effective representation. The list of duties proffered in *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir. 1968), *cert. denied,* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968), and mentioned in the majority opinion, provides just such a starting point:

"Counsel for an indigent defendant should be appointed promptly. Counsel should be afforded a reasonable opportunity to prepare to defend an accused. Counsel must confer with his client without undue delay and as often as necessary, to advise him of his rights and to elicit matters of defense or to ascertain that potential defenses are unavailable. Counsel must conduct appropriate investigations, both factual and legal, to determine if matters of defense can be developed, and to allow himself enough time for reflection and preparation for trial."

If a defendant could demonstrate a substantial violation of any such requirement, I would conclude that he had been denied reasonably effective representation unless the state could show a lack of prejudice.

Two factors require that the burden of proof be upon the state once a violation is established. First, it is the state's burden to prove guilt beyond a reasonable doubt. Requiring the defendant to show prejudice would shift the burden to him and force him to establish the likelihood of his own innocence. Additionally, proof of prejudice may well be lacking in the record for the very reason that counsel has been ineffective. *United States v. DeCoster,* 159 U.S. App.D.C. 326, 487 F.2d 1197 (1973).

Turning to the application of the foregoing principles to the facts of this case, the state has ably demonstrated that counsels' challenged conduct did not operate to prejudice appellant's defense. I, therefore, concur with the majority's conclusion that appellant was not denied effective assistance of counsel.

CAMERON, Chief Justice (concurring): I concur with Justice Gordon.