NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

LARRY D. WRIGHT, *Appellant.*

Nos. 1 CA-CR 19-0372, 1 CA-CR 19-0374
(Consolidated)
FILED 10-20-2020

---

Appeal from the Superior Court in Maricopa County
Nos. CR2018-001888-001, CR2019-005006-001
The Honorable William R. Wingard, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Carlos Daniel Carrion
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge D. Steven Williams delivered the decision of the Court, in which Presiding Judge Samuel A. Thumma and Judge David D. Weinzweig joined.

**W I L L I A M S**, Judge:

**¶1**        Larry D. Wright ("Wright") appeals his convictions and sentences for promoting prison contraband and destruction of jail property, arguing the superior court erred by failing to *sua sponte* order more competency evaluations. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**        In 2016, Wright was arrested for criminal trespassing at Circle K and taken to the Lower Buckeye Jail. At the jail, Wright was strip searched. The search produced four baggies of methamphetamine. Wright was charged with promoting prison contraband, a Class 2 felony, for knowingly possessing methamphetamine at the jail.[1]

**¶3**        Almost a year later, Wright became upset over a meal he received and punched the glass window to his cell door twice, breaking it. Wright was charged with destruction of jail property, a Class 5 felony, for the damage to his jail cell window.[2]

**¶4**        Defense counsel moved the superior court to find Wright incompetent to stand trial in 2016 on the criminal trespassing charge. *See* Ariz. R. Crim. P. 11. The court ordered Wright be evaluated by three doctors. Based upon the evaluations, the court found Wright incompetent, but restorable to competency. After undergoing restorative treatment, and

---

[1] The prison contraband charge was originally filed in the superior court in 2017, under case no. CR 2017-002071-001, and later refiled under case no. CR 2019-005006-001. On appeal, that case was assigned case no. 1 CA-CR 2019-0374.

[2] The destruction of jail property charge was filed in the superior court under case no. CR 2018-001888-001, and, on appeal given case no. 1 CA-CR 19-0372. The two cases have been consolidated for purposes of this appeal.

based upon a subsequent evaluation, the court found Wright was competent to stand trial.

¶5         Defense counsel again moved to find Wright incompetent in 2017 on the criminal trespassing charge and the promoting prison contraband charge. The results were the same, with the superior court finding Wright incompetent, but restorable. Wright received restorative treatment and was restored to competency.

¶6         In 2018, defense counsel moved a third time to find Wright incompetent, this time addressing all three cases. Neither Wright, nor the State, requested an evidentiary hearing to determine competency, but instead stipulated to the superior court making the determination based solely upon three new evaluations. One of the evaluating doctors concluded that Wright was incompetent, but, as before, was restorable, while the other two doctors concluded Wright *was competent* to stand trial (in no need of restoration). The court found Wright competent to stand trial.

¶7         In January 2019, defense counsel filed a fourth Rule 11 motion without Wright's knowledge. Defense counsel informed the court that Wright became very agitated when discussing the case and "cannot grasp the fact that the [three] cases are independent of each other," relaying Wright's strong preference that the cases be tried chronologically. The following month, at the final trial management conference, defense counsel asked for a sidebar conversation and informed the court:

> [Wright] called me on February 13th, sang me two Christmas carols, told me Merry Christmas and Happy New Year. He cannot aid in his defense. In addition, the [criminal trespassing case], [the prosecutor] is going to dismiss. [Wright's] still talking about Circle K, and I'm like, that's not relevant anymore. That case went away. He can't separate the cases out. I don't know what to do with him because I thought once we got rid of that, we could start focusing on the other [cases].

¶8         The conversation continued with the court offering to speak to Wright, but defense counsel instead asked for a trial continuance so she could follow up with Wright. She believed the dismissal of the criminal trespassing charge might ease her communication with Wright on the remaining charges. The superior court thus held the fourth Rule 11 motion in "abeyance" until defense counsel could speak further with Wright. The

motion was never raised again by counsel and Wright was tried on both remaining charges.

**¶9** Wright was convicted, in two separate jury trials, of promoting prison contraband and received a mitigated sentence of 10.5 years imprisonment, as well as destruction of jail property, for which he was sentenced to 1.5 years imprisonment, with both sentences running concurrently. Wright timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶10** Due process protects a defendant from being tried or convicted of a crime if a court determines him to be incompetent. *See Drope v. Missouri*, 420 U.S. 162, 172 (1975). A defendant is incompetent to stand trial if, as a result of mental illness, defect, or disability, the defendant is unable to understand the proceedings against him or to assist in his defense. Ariz. R. Crim. P. 11.1(a)(2). The test is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

**¶11** Rule 11 further defines the procedure for determining whether a defendant is competent to stand trial and instructs that a defendant has a right to a mental examination and a hearing on his competency when reasonable grounds for an examination exist. Ariz. R. Crim. P. 11.3(a); *see also State v. Amaya-Ruiz*, 166 Ariz. 152, 162 (1990). "Reasonable grounds exist if there is sufficient evidence to indicate that the defendant is not able to understand the nature of the proceedings against him and to assist in his defense." *State v. Salazar*, 128 Ariz. 461, 462 (1981). The superior court has "broad discretion in determining whether reasonable grounds exist to order a competency hearing and its decision will not be reversed absent a manifest abuse of discretion." *Amaya–Ruiz,* 166 Ariz. at 162; *see also State v. Glassel*, 211 Ariz. 33, 44, ¶ 27 (2005). This court will not reweigh the evidence, but instead reviews only whether reasonable evidence supports the superior court's determination. *State v. Arnoldi*, 176 Ariz. 236, 239 (App. 1993), *overruled on other grounds by State v. Jones*, 235 Ariz. 501, 503, ¶ 10 (2014). In doing so, we consider the facts in "a light most favorable to sustaining the trial court's finding." *State v. Brewer*, 170 Ariz. 486, 495 (1992).

¶12        Wright argues the superior court "erred by failing to order a competency examination *sua sponte* when reasonable grounds existed."

¶13        Although the superior court had a "continuing duty to inquire into [Wright's] competency, and to order a Rule 11 examination *sua sponte* if reasonable grounds exist[ed]," *Amaya-Ruiz*, 166 Ariz. at 162, any additional Rule 11 examination was required only if new circumstances created a good faith doubt about Wright's competency, *State v. Cornell*, 179 Ariz. 314, 322–23 (1994); *see also State v. Contreras*, 112 Ariz. 358, 360–61 (1975) (additional examinations may be ordered if there arises some reasonable ground to question the defendant's competency based on facts not previously presented).

¶14        Wright points to several examples indicating reasonable grounds existed for another competency evaluation: (1) his fixation on a "non-existent Circle K video that would prove his innocence [in the prison contraband case] and that the criminal trespass victims were lying and were drug dealers;" (2) his inability to grasp that the criminal trespass was independent of the contraband charge; (3) his statement that his previous defense counsel was a prosecutor; (4) his mistaken belief that subsequent defense counsel shared the same last name as, and was related to, one of the victims in the criminal trespassing case; (5) his belief that the judicial system was prejudiced against him; (6) defense counsel's opinion that Wright "[had] no understanding of the laws and no capacity to rationally attempt to change his delusional thoughts;" and, (7) defense counsel's statement that Wright belatedly called her in February to sing Christmas carols and wish her Merry Christmas and Happy New Year.

¶15        Most of those behaviors were not new circumstances, having been raised before Wright's 2018 competency determination. The superior court knew about Wright's fixation on a non-existent Circle K video, his perceived link between the criminal trespassing and prison contraband charges, his claim that the food at the prison was poisoned (a belief one of the evaluating doctors stated was "exceptionally common among inmates, [] including individuals with no history of mental illness"), and his belief that the justice system was prejudiced against him. And, while Wright's statements regarding both previous and subsequent defense counsel were novel, as were his belated holiday wishes, those behaviors do not independently demonstrate that Wright lacked capacity to understand the nature of the proceedings or to assist in his defense.

¶16        As noted by Dr. Hernandez, one of the two doctors who concluded Wright was competent, Wright correctly identified the charges

against him, the difference between felonies and misdemeanors, and the role of evidence and courtroom personnel. Wright expressed frustration with defense counsel and the judge, stating: "my lawyer don't do what I asked and wants me to plead guilty and I want a trial" and "[the] judge [is] prejudice[d] against Black people, Indians, and Mexicans." Seeing no evidence of a mental disease, defect or disability that would interfere with Wright's ability to "understand the nature and the object of the proceedings against him or prevent him from cooperating with his attorney in his defense," Dr. Hernandez further noted that, while Wright had strong beliefs about how his case should be resolved, he could assist counsel in his own defense, should he decide to do so.

¶17            Similarly, Dr. Kirby, who also concluded Wright was competent, observed that Wright correctly identified the charges he faced, the possible legal consequences, and the roles and purposes of courtroom personnel. When speaking about defense counsel, Wright stated she was "prejudiced . . . [and] won't do what I'm wanting her to do." While noting that Wright's thoughts were often tangential, Dr. Kirby believed Wright had the "capacity to rationally assist his attorney in his own defense, should he choose to do so," concluding that Wright's presentation was "substantially more consistent with a finding of malingering than that of a serious mental health condition" and that Wright was "goal-directed with a goal of being found incompetent or criminally insane such that he would not be accountable for his current charges."

¶18            And, although defense counsel believed Wright was incompetent, that fact did not require the superior court to order another Rule 11 evaluation. *See State v. Williams*, 122 Ariz. 146, 153–54, (1979) (in the absence of additional evidence, our supreme court has held that a superior court does not abuse its discretion in failing to order, *sua sponte*, a Rule 11 evaluation based on defense counsel's own assertions that the defendant is unable to assist in his defense).

¶19            Moreover, the record is replete with evidence that Wright understood the proceedings against him and could assist in his defense. Wright described the charges against him, participated in settlement conferences and provided answers responsive to the court's questions, objected to the appointment of Judge Foster as the presiding trial judge based upon Judge Foster's earlier role at the settlement conference, and demonstrated an awareness of his rights, such as the right to cross-examine witnesses and to file an appeal if he was convicted. While Wright's legal strategy (maintaining his innocence) differed from that of defense counsel, and while he was often at odds with defense counsel, these facts alone do

not render Wright incompetent. *See State v. Djerf*, 191 Ariz. 583, 591, ¶ 24 (1998) ("[D]issatisfaction with counsel does not, of itself, warrant a competency hearing."); *see also State v. Kayer*, 194 Ariz. 423, 434, ¶ 38 (1999) ("Competent choices are not to be equated with wise choices; competent defendants are allowed to make choices that may not objectively serve their best interests."). On this record, the superior court did not err in failing to *sua sponte* order subsequent competency evaluations.

## CONCLUSION

**¶20**        For the foregoing reasons, Wright's convictions and resulting sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:   AA

7